1  KNEAFSEY TOSTADO & ASSOCIATES LLP
   Sean M. Kneafsey (SBN 180863)
2  skneafsey@KTAlaw.com
   800 Wilshire Blvd., Suite 710
3  Los Angeles, California 90017
   Telephone:   (213) 892-1200
4  Facsimile:    (213) 892-1208

5

   Attorneys for Plaintiffs
6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11                                    )   Case No.  SACV09-1345 DOC (ANX)
                                       )
12  PIMCO FUNDS, for its separate      )
    investment portfolios; ASSET-BACKED )  **FIRST AMENDED COMPLAINT**
13  SECURITIES PORTFOLIO, U.S.         )   **FOR VIOLATION OF SECTIONS**
    GOVERNMENT SECTOR PORTFOLIO,)      **12(2) AND 11 OF THE SECURITIES**
14  SHORT TERM FUND, TOTAL             )   **ACT OF 1933; VIOLATION OF**
    RETURN FUND, TOTAL RETURN          )   **CALIFORNIA CORPORATIONS**
15  MORTGAGE FUND,  MORTGAGE           )   **CODE SECTIONS 25401, 25501,**
    PORTFOLIO, INCOME FUND, REAL       )   **AND 25504; BREACH OF**
16  RETURN FUND, REAL RETURN           )   **CONTRACT;RESCISSION;**
    ASSET FUND, REAL ESTATE REAL       )   **MUTUAL AND UNILATERAL**
17  RETURN STRATEGY FUND, GLOBAL       )   **MISTAKE; NEGLIGENT**
    BOND FUND, GLOBAL BOND FUND        )   **MISREPRESENTATION; AND,**
18  (U.S. DOLLAR HEDGED),              )   **THE HAWAII SECURITIES ACT;**
    INTERNATIONAL PORTFOLIO,           )
19  FOREIGN BOND FUND (U.S. DOLLAR )        **DEMAND FOR JURY TRIAL**
    HEDGED), FOREIGN BOND FUND,        )
20  HIGH YIELD FUND,                   )
    INTERNATIONAL STOCKS PLUS          )
21  TREASURY STRATEGY FUND,            )
    JAPANESE STOCKS PLUS TREASURY)
22  STRATEGY FUND ; PIMCO              )
    VARIABLE INSURANCE TRUST on        )
23  behalf of its Foreign Bond Portfolio and its)
    Global Bond Portfolio; PIMCO       )
24  ABSOLUTE RETURN STRATEGY V         )
    ALPHA FUND; PIMCO GLOBAL           )
25  RELATIVE VALUE OFFSHORE FUND )
    III, LTD.; PIMCO PENSIONPLUS       )
26  FUND LLC; PIMCO ABSOLUTE           )
    RETURN STRATEGY II OFFSHORE        )
27  FUND LTD; PIMCO ABSOLUTE           )
    RETURN STRATEGY III OFFSHORE       )

28                                    -1-

                                          FIRST AMENDED COMPLAINT
                                          SACV09-1345 DOC (ANX)

1  FUND LTD.; PIMCO ABSOLUTE )
   RETURN STRATEGY V OFFSHORE )
2  FUND LTD; PIMCO STRATEGIC )
   GLOBAL GOVERNMENT FUND, INC.; )
3  PIMCO LUXEMBOURG S.A. on behalf )
   of PIMCO LUXEMBOURG TRUST )
4  AND ITS SUB-FUNDS, GLOBAL )
   BOND FUND, GLOBAL STOCKS PLUS )
5  TREASURY FUND IN EUROS, AND )
   COMMODITY REAL RETURN )
6  STRATEGY FUND; PIMCO )
   DISTRESSED MORTGAGE FUND, )
7  L.P.; PIMCO AUSTRALIA PTY LTD., )
   for itself and its clients; PIMCO EUROPE )
8  LTD.; PIMCO GLOBAL ADVISORS )
   LTD. for itself and on behalf of its )
9  GLOBAL INVESTOR SERIES, )
   GLOBAL BOND, GIS GLOBAL BOND )
10 EX-US, GIS GLOBAL REAL RETURN, )
   GIS COMMDITIESPLUS STRATEGY )
11 FUND, GIS MORTGAGE BACKED )
   SECURITIES FUND; ALLIANZ )
12 GLOBAL INVESTORS for itself and on )
   behalf of ALLIANZ COMMODITIES )
13 PLUS; WILMINGTON TRUST as )
   Trustee of WILMINGTON TRUST )
14 RETIREMENT AND INSTITUTIONAL )
   SERVICES COMPANY COLLECTIVE )
15 INVESTMENT TRUST and as Trustee of )
   PIMCO COMMODITIES PLUS TRUST )
16 II; FIXED INCOME SHARES for itself )
   and on behalf of its separate investment )
17 portfolios SERIES C AND SERIES R; )
   PARS ASPIRE FUND; BROWN )
18 BROTHERS HARRIMAN TRUST )
   COMPANY (CAYMAN) LTD. as Trustee )
19 for PIMCO BERMUDA TRUST I and its )
   series trusts, PIMCO BERMUDA )
20 FOREIGN LOW DURATION FUND )
   AND PIMCO BERMUDA JBG )
21 FLOATER FOREIGN ALPHA FUND, )
   and as Trustee for PIMCO BERMUDA )
22 TRUST II, and its series trusts; PIMCO )
   BERMUDA LIBOR PLUS MASTER )
23 FUND, PIMCO BERMUDA JGB )
   FLOATER US STRATEGY FUND, AND )
24 PIMCO BERMUDA JGB FLOATER )
   FOREIGN STRATEGY FUND, and as )
25 Trustee for PIMCO BERMUDA TRUST )
   IV, and its series trusts, PIMCO )
26 BERMUDA GLOBAL BOND EX- )
   JAPAN FUND, BERMUDA JAPAN )
27 CORE PLUS FUND, AND PIMCO )
   GLOBAL HIGH YIELD STRATEGY )

28

-2-

FIRST AMENDED COMPLAINT
SACV09-1345 DOC (ANX)

| | |
|---|---|
| 1 | FUND, and as Trustee for PIMCO ) |
| | CAYMAN TRUST and its series trusts, ) |
| 2 | PIMCO CAYMAN GLOBAL ) |
| | AGGREGATE EX-JAPAN BOND ) |
| 3 | FUND, PIMCO CAYMAN GLOBAL ) |
| | AGGREGATE EX-JAPAN INCOME ) |
| 4 | FUND, PIMCO CAYMAN GLOBAL ) |
| | AGGREGATE EX-JAPAN, PIMCO ) |
| 5 | CAYMAN GLOBAL EX-JAPAN BOND ) |
| | FUND, PIMCO CAYMAN GLOBAL ) |
| 6 | EX-JAPAN (YEN-HEDGED) BOND ) |
| | FUND, PIMCO CAYMAN GLOBAL ) |
| 7 | MULTIPLE REAL RETURN FUND, ) |
| | PIMCO CAYMAN JAPAN COREPLUS ) |
| 8 | FUND, PIMCO CAYMAN JAPAN LOW ) |
| | DURATION FUND, AND PIMCO ) |
| 9 | CAYMAN TOPIX PLUS FUND; BNY ) |
| | FUND MANAGEMENT (CAYMAN) ) |
| 10 | LTD.  as trustee for PIMCO JAPAN LOW) |
| | DURATION ALPHA FUND; PACIFIC ) |
| 11 | LIFE INSURANCE COMPANY for itself ) |
| | and on behalf of its PACIFIC SELECT ) |
| 12 | FUND and its  MANAGED BOND ) |
| | SERIES, its PACIFIC FUNDS and its ) |
| 13 | separate series MANAGED BOND FUND) |
| | and INFLATION MANAGED FUND; ) |
| 14 | EQUITY TRUSTEES LIMITED for itself ) |
| | and on behalf of the following funds, ) |
| 15 | PIMCO GLOBAL REAL RETURN ) |
| | FUND, PIMCO GLOBAL COMMODITY) |
| 16 | REAL RETURN FUND, PIMCO ) |
| | TARGET RETURN FUND, PIMCO ) |
| 17 | INTERNATIONAL FIXED INTEREST ) |
| | TRUST, AND MLC-GLOBAL; ) |
| 18 | TRANSAMERICA FUND ADVISERS, ) |
| | INC. for itself and on behalf of TA IDEX ) |
| 19 | PIMCO REAL RETURN TIPS, a separate ) |
| | series of Transamerica IDEX Mutual ) |
| 20 | Funds,  and on behalf of TA IDEX ) |
| | PIMCO TOTAL RETURN, a separate ) |
| 21 | series of Transamerica IDEX Mutual ) |
| | Funds, and on behalf of PIMCO TOTAL ) |
| 22 | RETURN (ATST); ABU DHABI ) |
| | RETIREMENT PENSIONS AND ) |
| 23 | BENEFIT FUND; JULIUS BAER ) |
| | INVESTMENT FUND SERVICES for ) |
| 24 | itself and on behalf of AFP UNILEVER ) |
| | SCHWEIZ; ALLIANZ INSURANCE ) |
| 25 | LTD. for itself and on behalf of ALLIANZ) |
| | HEDGE PORTFOLIO; AMEREN ) |
| 26 | SERVICES, CO., for itself and on behalf ) |
| | of AMEREN RETIREMENT PLAN AND) |
| 27 | AMEREN MASTER RETIREMENT ) |
| | TRUST; OREGON INVESTMENT ) |
| 28 | -3- |

COUNCIL on behalf of OREGON
PUBLIC EMPLOYEES RETIREMENT
FUND; BOARD OF RETIREMENT OF
THE SAN DIEGO COUNTY
EMPLOYEES' RETIREMENT
ASSOCIATION; INGERSOLL RAND
COMPANY LIMITED AND ITS
WHOLLY OWNED SUBSIDIARY
TRANE, SUCCESSOR TO AMERICAN
STANDARD, INC., for itself and on
behalf of AMERICAN STANDARD
MASTER PENSION AND
RETIREMENT TRUST; ARIEL
REINSURANCE COMPANY LTD. for
itself and on behalf of its LOW
DURATION ACCOUNT; ARTSFARE
2006 TRUST NO. 1; PRUDENTIAL
INVESTMENTS LLC, AND
AMERICAN SKANDIA INVESTMENT
SERVICES, INC. AS CO-MANAGERS
for and on behalf of AMERICAN
SKANDIA TRUST (AST ADVANCED
STRATEGIES PORTFOLIO);
AUTOMOBILE CLUB OF MICHIGAN
AND AUTO CLUB INSURANCE
ASSOCIATION for themselves and on
behalf of AUTOMOBILE CLUB OF
MICHIGAN AND AUTO CLUB
INSURANCE ASSOCIATION
RETIREMENT PLAN FOR SALARIED
AND SALES EMPLOYEES; AXIS
SPECIALTY LIMITED; BAXTER
INTERNATIONAL INC. for itself and on
behalf of BAXTER INTERNATIONAL
INC. AND SUBSIDIARIES INCENTIVE
INVESTMENT PLAN TRUST;
BAYCARE HEALTH SYSTEM;
VERIZON COMMUNICATIONS, INC.,
SUCCESSOR TO BELL ATLANTIC
CORPORATION, for itself and on behalf
of BELL ATLANTIC MASTER
PENSION TRUST; BRUNEI SHELL
FUNDS SENDIRIAN BERHAD as
trustee of BRUNEI SHELL PROVIDENT
FUND AND BRUNEI SHELL
RETIREMENT BENEFIT FUND;
TRUSTEES OF THE CIVIL AVIATION
AUTHORITY PENSION SCHEME ON
BEHALF OF THE CIVIL AVIATION
AUTHORITY PENSION SCHEME'S
ABS PORTFOLIO AND SWAP
OVERLAY ACCOUNT; CAPITAL
GUIDANCE (FUND) LTD.; CATHOLIC
HEALTHCARE PARTNERS for itself

-4-

and on behalf of CATHOLIC
HEALTHCARE PARTNERS
RETIREMENT TRUST; SMITH
BARNEY FUND MANAGEMENT LLC
on behalf of CONSULTING GROUP
CAPITAL MARKETS FUNDS AND ITS
SERIES INTERNATIONAL FIXED
INCOME INVESTMENTS; CITY
UNIVERSITY OF HONG KONG; CIVIL
AVIATION AUTHORITY OF
SINGAPORE; THE CONSOLIDATED
EDISON RETIREMENT PLAN
MASTER TRUST; BOARD OF
RETIREMENT OF THE CONTRA
COSTA COUNTY EMPLOYEES'
RETIREMENT ASSOCIATION on behalf
of the CONTRA COSTA COUNTY
EMPLOYEES' RETIREMENT
ASSOCIATION (STOCKSPLUS);
ASCENSION HEALTH for itself and on
behalf of DAUGHTERS OF CHARITY
FUND; ALLIANZ GLOBAL
INVESTORS
KAPITALANLAGEGESELLSCHAFT
(GMBH) ON BEHALF OF DEUTSCHE
SHELL PENSIONEN; DEUTSCHE
BANK AMERICAS HOLDING CORP.
for itself and on behalf of DEUTSCHE
BANK CASH ACCOUNT PENSION
PLAN; FINANCE COMMITTEE OF
THE BOARD OF TRUSTEES OF THE
DIRECTORS GUILD OF AMERICA for
itself and on behalf of PRODUCER
BASIC PENSION PLAN AND
PRODUCER SUPPLEMENTAL
PENSION PLAN; DORIS DUKE
CHARITABLE FOUNDATION;
EMPLOYEES' RETIREMENT PLAN OF
SENTARA HEALTH CARE;
ENLIGHTENMENT PARTNERS;
EWING MARION KAUFFMAN
FOUNDATION; FAIRFAX COUNTY
EMPLOYEES' RETIREMENT
SYSTEM; FAIRFAX COUNTY
UNIFORMED RETIREMENT SYSTEM;
PROFIT SHARING COMMITTEE OF
FREESCALE SEMICONDUCTOR, INC.
for itself and on behalf of FREESCALE
SEMICONDUCTOR INC.
RETIREMENT SAVINGS TRUST;
FRONTIER COMMUNICATIONS
CORPORATION PENSION PLAN FOR
ITSELFAND AS SUCCESSOR TO
CITIZENS UTILITIES PENSION PLAN;

-5-

FUNDO DE PENSOES; FORTIS
INSURANCE BELGIUM, NKA AG
INSURANCE, ON BEHALF OF G.A.
FUND-L-SICAV – BOND ACTIVE
WORLD TP; PROMARK GLOBAL
ADVISORS LIMITED, FORMERLY GM
ASSET MANAGEMENT (UK)
LIMITED, for itself and on behalf of GM
INTERNATIONAL FIXED INTEREST
BONDS PFPV; PROMARK
INVESTMENT ADVISORS LIMITED,
FORMERLY GENERAL MOTORS
INVESTMENT MANAGEMENT
CORPORATION, for itself and on behalf
of GMAM GROUP PENSION TRUST I
MULTI SECTOR – US/FOREIGN,
GMAM GROUP PENSION TRUST II,
AND GMAM GROUP TRUST I;
HARBOR CAPITAL ADVISORS, INC.
for itself and on behalf of HARBOR
REAL RETURN FUND; HARTFORD
LIFE INSURANCE CO. (SEPARATE
ACCOUNT ICM SERIES IV);
EMPLOYEES' RETIREMENT SYSTEM
OF THE STATE OF HAWAII for itself
and on behalf of HAWAII EMPLOYEES'
RETIREMENT AND HAWAII
EMPLOYEES' RETIREMENT SYSTEM
GLOBAL PORTFOLIO; HONG KONG
POLYTECHNIC UNIVERSITY; IBM
CORPORATION for itself and on behalf
of IBM SAVINGS PLAN AND IBM
PERSONAL PENSION PLAN TRUST;
IBM RETIREMENT FUNDS EMEA
(RFE) for itself and on behalf of IBM
GLOBAL STRATEGY FUND;
INTERMOUNTAIN HEALTH CARE
HEALTH SERVICES INC. for itself and
on behalf of IHC PENSION PLAN;
ILLINOIS STATE UNIVERSITIES
RETIREMENT SYSTEM; INDIANA
STATE TEACHERS' RETIREMENT
FUND; IPAC ASSET MANAGEMENT
LIMITED; J SAINSBURY COMMON
INVESTMENT FUND LIMITED; J.C.
PENNEY COMPANY, INC. for itself and
on behalf of J.C. PENNEY COMPANY,
INC. PENSION PLAN; JBUT MASTER
INVESTMENT PARTNERSHIP, LLP;
JOHN HANCOCK INVESTMENT
MANAGEMENT SERVICES LLC for
itself and on behalf of JOHN HANCOCK
FUNDS II GLOBAL BOND FUND AND
JOHN HANCOCK FUNDS II REAL

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

-6-

RETURN BOND FUND; JOHN )
HANCOCK INS. CO. OF VERMONT )
FOR BENEFIT NO. 113; JOHN )
HANCOCK TRUST GLOBAL BOND )
TRUST; JOHNS HOPKINS )
UNIVERSITY; KCRC RETIREMENT )
BENEFIT SCHEME UNITISED TRUST; )
KUWAIT INVESTMENT AUTHORITY; )
LOCAL GOVERNMENT PENSIONS )
INSTITUTION OF FINLAND; LONGUE )
VUE PARTNERS; LOS ANGELES )
COUNTY METROPOLITAN TRANSIT )
AUTHORITY for itself and on behalf of )
LOS ANGELES COUNTY )
METROPOLITAN TRANSIT )
AUTHORITY RETIREMENT INCOME )
PLANS; MARS PENSION TRUSTEES )
LIMITED; MASSACHUSETTS )
MUTUAL LIFE INS. COMPANY on )
behalf of IBM INDEX GUARANTEED )
SEPARATE ACCOUNT 1; THE )
MCCLATCHY COMPANY, )
SUCCESSOR TO KNIGHT-RIDDER, )
INC., for itself and on behalf of THE )
KNIGHT-RIDER MASTER )
RETIREMENT TRUST TIPS; MET )
INVESTORS ADVISORY )
CORPORATION for itself and on behalf )
of MET INVESTORS SERIES TRUST )
(PIMCO TOTAL RETURN )
PORTFOLIO); MILLERCOORS )
BREWING COMPANY, FORMERLY )
KNOWN AS MOLSON COORS, for )
itself and on behalf of MOLSON COORS )
MASTER RETIREMENT TRUST; )
MISSOURI LOCAL GOVERNMENT )
EMPLOYEES' RETIREMENT SYSTEM )
for itself and on behalf of MISSOURI )
LAGERS – COMMODITY REAL )
RETURN AND MISSOURI LAGERS – )
GLOBAL REAL RETURN; MOTION )
PICTURE INDUSTRY HEALTH PLAN )
(ACTIVE MEMBER FUND); MOTION )
PICTURE INDUSTRY INDIVIDUAL )
ACCOUNT PLAN; ANNUITAS )
MANAGEMENT LIMITED for itself and )
on behalf of BOARD OF TRUSTEES OF )
THE NATIONAL PROVIDENT FUND – )
F FUND OF THE GLOBAL ASSET )
TRUST; NATIONAL RAILROAD )
RETIREMENT INVESTMENT TRUST; )
NEBRASKA INVESTMENT COUNSEL )
for itself and on behalf of STATE OF )
NEBRASKA PENSION AND STATE OF )

-7-

1  NEBRASKA ENDOWMENT; NESTLÉ )
   USA, INC. for itself and on behalf of )
2  NESTLE USA, INC. MASTER )
   RETIREMENT TRUST; THE )
3  COMPTROLLER OF THE CITY OF )
   NEW YORK AS CUSTODIAN OF THE )
4  FUNDS OF THE NEW YORK CITY )
   EMPLOYEES' RETIREMENT SYSTEM,)
5  TEACHERS' RETIREMENT SYSTEM )
   OF THE CITY OF NEW YORK, NEW )
6  YORK CITY FIRE DEPARTMENT )
   PENSION TRUST, AND NEW YORK )
7  CITY BOARD OF EDUCATION )
   RETIREMENT SYSTEM; NISOURCE )
8  INC. MASTER RETIREMENT TRUST )
   for itself and on behalf of RETIREMENT )
9  PLAN OF COLUMBIA ENERGY )
   GROUP COMPANIES; NTUC INCOME )
10 INSURANCE CO-OPERATIVE )
   LIMITED; OHIO OPERATING )
11 ENGINEERS PENSION FUND; )
   PETROLEUM DEVELOPMENT OMAN )
12 L.L.C. for itself and on behalf of OMANI )
   STAFF PENSION FUND; ORANGE )
13 COUNTY EMPLOYEES' RETIREMENT)
   SYSTEM; OREGON RETAIL )
14 EMPLOYEES' PENSION TRUST; )
   PORSCHE BUSINESS SERVICES INC.; )
15 PENSION FUND OF THE CHRISTIAN )
   CHURCH (DISCIPLES OF CHRIST), )
16 INC.; PUBLIC EMPLOYEES' )
   RETIREMENT SYSTEM OF )
17 MISSISSIPPI; PFIZER INC. BY AND )
   THROUGH ITS PLAN ASSETS )
18 COMMITTEE, THE INVESTMENT )
   COMMITTEE AND THE GLOBAL )
19 BENEFITS INVESTMENT )
   COMMITTEE AND ON BEHALF OF )
20 PFIZER MASTER TRUST (PENSION )
   TIPS PORTFOLIO); PACIFIC GAS AND)
21 ELECTRIC COMPANY for itself and on )
   behalf of PACIFIC GAS AND )
22 ELECTRIC COMPANY RETIREMENT )
   PLAN MASTER TRUST; PHELPS )
23 DODGE CORP. for itself and on behalf of)
   PHELPS DODGE CORPORATION )
24 MASTER TRUST; PREMIER HEALTH )
   PARTNERS for itself and on behalf of )
25 PREMIER HEALTH PARTNERS )
   OPERATING INVESTMENT )
26 PROGRAM; PRIMONE INC.; )
   PRIMTWO INC.; PRIMTHREE INC.; )
27 PRIMFOUR INC.; PRIMFIVE INC.; )
   AND PRIMSIX INC.; PRODUCER – )
28

-8-

FIRST AMENDED COMPLAINT
SACV09-1345 DOC (ANX)

1  WRITERS GUILD OF AMERICA )
   PENSION PLAN; DOW CHEMICAL )
2  COMPANY for itself and on behalf of ITS)
   SUBSIDIARY UNION CARBIDE )
3  CORPORATION AND UNION )
   CARBIDE EMPLOYEES' PENSION )
4  PLAN; R.R. DONNELLEY & SONS )
   COMPANY for itself and on behalf of )
5  RETIREMENT BENEFIT TRUST OF )
   R.R. DONNELLEY & SONS )
6  COMPANY; RAILWAYS PENSION )
   TRUSTEE COMPANY LIMITED; RCM, )
7  FORMERLY DRESDNER RCM )
   GLOBAL INVESTORS LLC, for itself )
8  and on behalf of DRESDNER RCM )
   GLOBAL INVESTORS COMMINGLED )
9  FUNDS LLC AND ITS SERIES RCM )
   FIXED INCOME FUND; STOCKSPLUS )
10 MANAGEMENT, INC. FOR ITSELF )
   AND ON BEHALF OF RED RIVER )
11 HYPI, L.P.; SOUTHERN CALIFORNIA )
   RETAIL CLERKS UNION AND FOOD )
12 EMPLOYERS JOINT PENSION TRUST )
   FUND; SAMARITAN INSURANCE )
13 FUNDING LIMITED; FINANCE )
   COMMITTEE OF THE )
14 SCHLUMBERGER MASTER PROFIT )
   SHARING TRUST FOR AND ON )
15 BEHALF OF SCHLUMBERGER )
   MASTER PROFIT SHARING TRUST; )
16 SCREEN ACTORS GUILD – )
   PRODUCERS PENSION PLAN; )
17 SENTARA HEALTHCARE; SIERRA )
   PACIFIC RESOURCES FOR ITSELF )
18 AND ON BEHALF OF SIERRA )
   PACIFIC RESOURCES RETIREMENT )
19 PLAN; SISTERS OF CHARITY OF )
   LEAVENWORTH HEALTH SYSTEM; )
20 SPECIALFORENINGEN ATP INVEST )
   II (GLOBAL HIGH YIELD BOND II); )
21 THE NORTHERN TRUST COMPANY )
   OF CONNECTICUT, AS TRUSTEE FOR)
22 SPRINT MASTER TRUST (ENHANCED)
   INDEXATION); SSM HEALTH CARE )
23 PORTFOLIO MANAGEMENT )
   COMPANY; STANFORD UNIVERSITY )
24 BY AND THROUGH THE STANFORD )
   MANAGEMENT COMPANY ON )
25 BEHALF OF THE MERGED )
   ENDOWMENT POOL; STATE )
26 RETIREMENT AGENCY FOR ITSELF )
   AND ON BEHALF OF STATE )
27 RETIREMENT AND PENSION )
   SYSTEM OF MARYLAND; )
28                              -9-

STICHTING BLUE SKY ACTIVE )
GLOBAL INFLATION-LINKED BOND )
FUND; STICHTING )
BEDRIJFSTAKPENSIONENFONDS )
VOOR DE METALEKTRO (PME); )
STICHTING DOW PENSIOENFONDS; )
APG ASSET MANAGEMENT U.S. INC. )
FOR ITSELF AND ON BEHALF OF )
STICHTING PENSIOENFONDS ABP )
(INDEX LINKED BONDS); SUN LIFE )
ASSURANCE COMPANY OF CANADA )
(U.S.) (VARIABLE ACCOUNT H); )
SYSCO CORPORATION FOR ITS SELF )
AND ON BEHALF OF SYSCO )
CORPORATION RETIREMENT PLAN; )
TOWER ASSET MANAGEMENT )
LIMITED FOR ITSELF AND ON )
BEHALF OF GLOBAL BOND FUND )
AND THE INTERNATIONAL BOND )
FUND OF THE TAM GROUP )
INVESTMENT FUND; PRUDENTIAL )
INVESTMENTS LLC FOR ITSELF AND )
ON BEHALF OF THE TARGET )
PORTFOLIO TRUST )
INTERNATIONAL BOND PORTFOLIO;)
TEACHERS' RETIREMENT SYSTEM )
OF OKLAHOMA; THE SALVATION )
ARMY;  TRUSTEES OF THE CIVIL )
AVIATION AUTHORITY PENSION )
SCHEME; UNITED FOOD AND )
COMMERCIAL WORKERS )
INTERNATIONAL UNION–INDUSTRY )
PENSION FUND (BLENDED )
PORTFOLIO); SOUTHERN )
CALIFORNIA UNITED FOOD AND )
COMMERCIAL WORKERS UNIONS )
AND FOOD EMPLOYERS JOINT )
PENSION TRUST FUND )
(STOCKSPLUS); GENERAL BOARD )
OF PENSION AND HEALTH )
BENEFITS OF THE UNITED )
METHODIST CHURCH; MORELY )
FINANCIAL SERVICES, INC. ON )
BEHALF OF UNION BOND AND )
TRUST CO. - THE ACTIVELY )
MANAGED FUND; DOW CHEMICAL )
COMPANY FOR ITSELF AND ON )
BEHALF OF ITS WHOLLY OWNED )
SUBSIDIARY UNION CARBIDE )
CORPORATION AND UNION )
CARBIDE EMPLOYEES' PENSION )
PLAN; USAA BENEFITS )
INVESTMENT COMMITTEE ON )
BEHALF OF THE USAA MASTER )

-10-

```
 1 | TRUST, PENSION AND RSP (LONG      )
   | DURATION) AND ON BEHALF OF        )
 2 | THE USAA MASTER TRUST,            )
   | PENSION AND SIP (REAL RETURN);    )
 3 | VALERO ENERGY CORPORATION for     )
   | itself and on behalf of VALERO    )
 4 | ENERGY CORPORATION PENSION        )
   | PLAN; VAN LEER GROUP              )
 5 | FOUNDATION; INTERNATIONAL         )
   | CITY MANAGEMENT ASSOCIATION       )
 6 | RETIREMENT CORPORATION FOR        )
   | ITSELF AND ON BEHALF OF           )
 7 | VANTAGE TRUST (PLUS FUND); THE    )
   | PRUDENTIAL COMPANY OF             )
 8 | AMERICA FOR ITSELF AND ON         )
   | BEHALF OF VCA-GI-7 DIVERSIFIED    )
 9 | MORTGAGE INDEX ACCOUNT AND        )
   | ON BEHALF OF VCA-GI-7 – MLP       )
10 | ACCOUNT; VERIZON INVESTMENT       )
   | MANAGEMENT CORPORATION FOR        )
11 | ITSELF AND ON BEHALF OF           )
   | VERIZON COMMUNICATIONS INC.       )
12 | MASTER SAVINGS TRUST;             )
   | VICTORIAN FUNDS MANAGEMENT        )
13 | CORP. FOR ITSELF AND ON BEHALF    )
   | OF VICTORIAN WORKCOVER            )
14 | AUTHORITY; INVESTMENT AND         )
   | ADMINISTRATIVE COMMITTEE OF       )
15 | THE WALT DISNEY CO. SPONSORED     )
   | QUALIFIED BENEFIT PLANS AND       )
16 | KEY EMPLOYEES DEFERRED            )
   | COMPENSATION AND RETIREMENT       )
17 | PLAN MASTER TRUST FOR ITSELF      )
   | AND ON BEHALF OF THE WALT         )
18 | DISNEY COMPANY RETIREMENT         )
   | PLAN MASTER TRUST; THE HARRY      )
19 | AND JEANETTE WEINBERG             )
   | FOUNDATION, INC.; GALLIARD        )
20 | CAPITAL MANAGEMENT FOR            )
   | ITSELF AND ON BEHALF OF WELLS     )
21 | FARGO BANK INVESTMENT FUNDS       )
   | FOR EMPLOYEE BENEFIT TRUST;       )
22 | WHEATON FRANCISCAN SERVICES,      )
   | INC. INVESTMENT TRUST;            )
23 | WORKERS' COMPENSATION             )
   | REINSURANCE ASSOCIATION;          )
24 | WYOMING STATE TREASURER'S         )
   | OFFICE; XCEL ENERGY INC. for itself )
25 | and on behalf of XCEL ENERGY INC. )
   | VOLUNTARY EMPLOYEES'              )
26 | BENEFICIARY TRUST FOR RETIRED     )
   | BARGAINING UNIT EMPLOYEES;        )
27 | AND MLC INVESTMENTS LIMITED       )
   | AS TRUSTEE FOR NATIONAL           )
28 |
```

-11-

1   CORPORATE INVESTMENTS TRUST; )
    EMPLOYEE BENEFIT PLANS        )
2   INVESTMENT POLICY COMMITTEE   )
    on behalf of MeadWestvaco Corporation )
3   Retirement Plan for Salaried Employees; )
    INTERNATIONAL PAPER COMPANY   )
4   for itself and on behalf of the Retirement )
    Plan of International Paper Company and )
5   certain other pension plans of International )
    Paper Company; TEACHERS'      )
6   RETIREMENT SYSTEM OF THE      )
    STATE OF ILLINOIS is an entity )
7   organized under Illinois law   )
                                   )
8                  Plaintiffs      )
                                   )
9                                  )
                                   )
10                vs.              )
                                   )
11  RESIDENTIAL ACCREDIT LOANS,    )
    INC.; RESIDENTIAL FUNDING      )
12  COMPANY, LLC, FORMERLY         )
    KNOWN AS RESIDENTIAL FUNDING   )
13  CORPORATION; RALI 2006-Q06     )
    TRUST; RALI 2006-Q03 TRUST;    )
14  GOLDMAN, SACHS & CO.; and UBS  )
    SECURITIES LLC,                )
15                                 )
                   Defendants.     )
16                                 )
                                   )
17  _____  )

28                              -12-

1    TO THE HONORABLE JUDGE OF THE UNITED STATES

2   DISTRICT COURT:

3    This Complaint is filed by mutual funds and other clients of Pacific

4   Investment Management Company LLC ("PIMCO") who seek to rescind or

5   recover damages as a result of PIMCO's purchase of notes for their accounts

6   on the basis of two erroneous "free-writing prospectuses" that materially

7   misstated the credit support and payment provisions applicable to over $550

8   million of notes issued and/or sold to them by the Defendants.  In support of

9   their right to rescind these purchases, or recover the damages they suffered

10   as a result of having invested in reliance on these erroneous prospectuses,

11   plaintiffs plead as follows:

## **PARTIES**

13    1.    Plaintiffs are managed mutual funds and other current or former

14   clients of PIMCO for whose accounts PIMCO purchased the notes at issue

15   in this lawsuit.  A complete list of the plaintiffs is attached to this Complaint

16   as Exhibit "A."  PIMCO is a registered investment advisor with its principal

17   place of business at 840 Newport Center Drive, Newport Beach, CA.  It is a

18   leading investment adviser and purchased the notes at issue in this complaint

19   to be held by its clients and managed mutual funds.  For ease of reference,

20   and to save space in this complaint, the plaintiffs will be referred to

21   collectively as "PIMCO Plaintiffs".

22    2.    Defendant Residential Accredit Loans, Inc. ("RALI") is a

23   securitizer of residential mortgages originated by Defendant Residential

24   Funding Corporation, a wholly owned subsidiary of GMAC-RFC Holding

25   Company, LLC.  RALI's principal place of business is 8400 Normadale

26   Lake Blvd., Suite 600, Minneapolis, MN   55437; Registered Agent is

27   Corporation   Service   Company,   2711   Centerville   Road,   Suite   400,

28    -13-

1   Wilmington, DE  19808.  It is a Delaware corporation, and was the depositor

2   of mortgages that secured the RALI Class A1 Mortgage Asset- Backed Pass

3   Through Certificates (RALI Notes) that the PIMCO Plaintiffs purchased.

4       3.    Defendant Residential Funding Company, LLC, formerly

5   known as Residential Funding Corporation ("RFC"), is the master servicer

6   and sponsor of the RALI Notes.  It is also the depositor of all of the

7   mortgages pooled as security for the RALI Notes.  RFC is a Delaware

8   Limited Liability Company with its principal place of business at One

9   Meridian Crossings, Suite 100, Minneapolis, MN  55423; its Registered

10  Agent is Corporation Service Company doing business in California as CSC

11  – Lawyers Incorporating Service, CA, the principals of which are Anthony

12  N. Renzi and James N. Young at One Meridian Crossings, Suite 100,

13  Minneapolis, MN  55423 and Cathy Quenneville at 200 Renaissance Center,

14  Detroit, MI  48265.

15      4.    Defendants RALI 2006-Q06 Trust and RALI 2006-Q03 Trust

16  (collectively the "Trusts") are the issuers of the RALI Notes.  They are New

17  York business trusts, which issue mortgage asset-backed pass through

18  certificates in series pursuant to certain rules of the Securities and Exchange

19  Commission.  Their principal office locations are listed with the SEC as

20  8400 Normandale Lake Boulevard, Suite 600, Minneapolis, Minnesota

21  55437.  Defendants RALI, RFC, and the Trusts are referred to collectively in

22  this complaint as the RALI Defendants.

23      5.    Defendant Goldman, Sachs & Co., Inc. ("Goldman Sachs") is a

24  Delaware public company with its principal place of business at 85 Broad

25  Street, New York, New York 10004. Its Registered Agent is CT Corporation

26  System, California.   It was the underwriter of the RALI Notes that the

27

28                        -14-

FIRST AMENDED COMPLAINT
SACV09-1345 DOC (ANX)

1    PIMCO Plaintiffs purchased, and was also the direct seller of many of the

2    notes the PIMCO Plaintiffs purchased.

3        6.      Defendant UBS Securities LLC ("UBS") is a licensed broker

4    dealer who sold PIMCO certain of the RALI Notes it purchased.  UBS is an

5    indirect wholly-owned subsidiary of UBS AG, with its principal place of

6    business at 1285 Avenue of the Americas, 19th Floor, New York, New York

7    10019.  It was a direct seller of many of the notes the PIMCO Plaintiffs

8    purchased.

9                        **JURISDICTION AND VENUE**

10       7.      This Court has jurisdiction of this matter pursuant to 28 U.S.C.

11   §1331, because it arises under the Securities Act of 1933.

12       8.      Venue is proper in this District, because it is the district in

13   which the notes were sold to and purchased by the PIMCO Plaintiffs.

14       9.      All the defendants are subject to personal jurisdiction in this

15   district because they continuously and systematically do business in

16   California, and so are subject to general jurisdiction.  All the defendants are

17   also subject to personal jurisdiction because the PIMCO Plaintiffs' claims

18   arise specifically from the Defendants' contacts with PIMCO in California.

19                **NO ALLEGATION OF FRAUDULENT INTENT**

20       10.     This is an action for rescission of securities contracts formed as

21   a result of a mutual mistake, for damages as a result of the Defendants'

22   violations of Sections 11 and 12 of the Securities Act of 1933, and for

23   common law negligent misrepresentation.  The PIMCO Plaintiffs do not

24   allege any fraud claims, nor does it allege that any defendant acted with

25   fraudulent intent or scienter.  Instead, the PIMCO Plaintiffs allege *only* that

26   the misstatements below are factual misstatements and inaccurate

27   disclosures that arose through careless error on the part of the Defendants.

28                                 -15-

At most, the PIMCO Plaintiffs allege only that their agreements to purchase the RALI Notes at issue in this lawsuit were the result of a mutual mistake. Furthermore, to the extent any allegation of the defendants' state of mind is required, the PIMCO Plaintiffs allege solely that the erroneous representations concerning the credit support and payment rights enjoyed by the RALI Notes were the result of negligence. The PIMCO Plaintiffs disavow any intention to allege any fraudulent intent on the part of any defendant, and the allegations of this complaint should not be construed to do so. Accordingly, the provisions of Federal Rule 9(b) and the Private Securities Litigation Reform Act do not apply to this complaint.

## BACKGROUND FACTS

11.   This action arises from material misstatements made to the PIMCO Plaintiffs in connection with their purchases of over $550 million of RALI Notes that were issued by Defendant RALI pursuant to a shelf registration statement that was filed with the Securities and Exchange Commission on or about March 3, 2006.

12.   Defendant Goldman Sachs was the underwriter for each offering of the RALI Notes at issue in this lawsuit and was the direct seller of many of the RALI Notes. Defendant UBS was also the direct seller of many of the RALI Notes.

13.   The Securities and Exchange Commission permits "well seasoned issuers" of securities—such as Defendants RALI and RALI Trust—to issue and sell securities pursuant to a "free-writing prospectus" that summarizes the material terms of the securities being issued. Applicable federal law, including Sections 11 and 12(2) of the Securities Act of 1933, prohibits the sale of securities by means of a material misstatement or omission in a registration statement and prospectus, respectively.

-16-

1    Liability under Sections 11 and 12(2) is virtually absolute, and attaches to all
2    misrepresentations of material facts, even those that result from drafting
3    errors.   A free writing prospectus is a "prospectus" for purposes of Section
4    12 liability, and is considered to be part of a registration statement for
5    purposes of Section 11 liability.  For purposes of forming a contract to sell
6    securities, the free writing prospectus states the terms on which the securities
7    in question are being offered for sale.

8           14.  As described below, the description of the credit support for the
9    RALI Notes in the free-writing prospectuses was believed by PIMCO,
10   Goldman Sachs, and UBS to be accurate on each occasion when the PIMCO
11   Plaintiffs purchased RALI Notes.  Contrary to federal law, it now appears
12   that the stated contract terms concerning the credit support and sequential
13   payment rights enjoyed by the RALI Notes do not conform to the
14   descriptions of the same matters in the underlying prospectus and
15   registration statement pursuant to which these notes were issued.  The free-
16   writing prospectus is also materially misleading concerning which
17   provisions—the free-writing prospectus or the prospectus and PSAs—will
18   govern in the event of a conflict between the governing documents.  These
19   material misstatements, which were not known to the PIMCO Plaintiffs
20   when they purchased the RALI Notes, and which Goldman Sachs and UBS
21   assert were not known to them when they sold the Notes to the PIMCO
22   Plaintiffs, have caused the PIMCO Plaintiffs to sustain substantial damages.
23   These material misstatements and mutual mistakes concerning the credit
24   support for the RALI Notes also afford the PIMCO Plaintiffs the right to
25   rescind their purchases of the RALI Notes, in full.

26          15.  The free-writing prospectuses for the RALI Notes were issued
27   pursuant to, and became part of, the related RALI shelf registration

28                                         -17-

statement that was originally filed on or about March 3, 2006.  These free-writing prospectuses, on which the PIMCO Plaintiffs relied in purchasing the RALI Notes, represented that these notes would enjoy significant credit support.  They also represented that the RALI Notes would enjoy priority rights to payments of principal if the performance of the underlying mortgage collateral declined to a specified level as of the "Trigger Event" defined in the free writing prospectuses.    For the avoidance of any doubt concerning the rights of the RALI Noteholders, each of the free writing prospectuses stated that in the event of any conflict between the free writing prospectus and the underlying prospectus, the free writing prospectus would govern as follows:

> **Important notice about information presented in any final term sheet for any class of offered certificates, the term sheet supplement and the related base prospectus with regard to the offered certificates**:
>
> We provide information to you about the offered certificates in three or more separate documents that provide progressively more detail:
>
> - the related base prospectus, dated March 3, 2006, which provides general information, some of which may not apply to the offered certificates;
>
> - the term sheet supplement, dated March 13, 2006, which provides general information about series of certificates pursuant to the depositor's QO program, some of which may not apply to the offered certificates; and
>
> - this term sheet, which describes terms applicable to the classes of offered certificates described herein and provides a description of certain collateral stipulations regarding the

1    mortgage loans and the parties to the transaction.

2    The registration statement to which this offering relates is

3    Commission File Number 333-131213.

4    ...

5    *If the description of the offered certificates in this term sheet differs*

6    *from the description of the senior certificates in the related base*

7    *prospectus or the term sheet supplement, you should rely on the*

8    *description in this term sheet. ...*[1]

9    The free writing prospectuses went on to state that the sale of the

10   RALI A1 Notes were *conditioned upon* the securities having the

11   characteristics described in the free-writing prospectuses: "Our obligation to

12   sell securities to you is conditioned on the securities having the

13   characteristics described in these materials. If we determine that condition is

14   not satisfied in any material respect, we will notify you, and neither the

15   issuer nor the underwriter will have any obligation to you to deliver all or

16   any portion of the securities you have committed to purchase, and there will

17   be no liability between us as a consequence of the non-delivery."

18   16.   The free-writing prospectuses also represented that the RALI

19   Notes would be governed by Pooling and Servicing Agreements (PSAs) that

20   tracked the priority of payment provisions specified in the free-writing

21   prospectus, including the defined "Trigger Event." It cannot be disputed that

22   the free-writing prospectus was required to describe these provisions of the

23

24   _____

25   [1] *See* Free Writing Prospectus RALI 2006-Q03 Notes, at pp. 1 and 3; Free

26   Writing Prospectus RALI 2006-Q-06 Notes, at pp. 1 and 3. (Emphasis and
     italics original).

27

28                                    -19-

1  PSAs accurately. It also cannot be disputed that the free writing prospectus

2  did not, in fact, do so.

3     17. In each case, PIMCO (the PIMCO Plaintiffs' investment adviser)

4  was presented with a free-writing prospectus that represented that, as a result

5  of the Trigger Event, payments of principal would be diverted to the RALI

6  Notes to protect them from losses on the underlying mortgages. The

7  definition of "Trigger Event" in the free writing prospectus for the RALI

8  Q03 Notes stated that the triggers could occur as early as 2009:

9    **Trigger Event:** A Trigger Event is in effect with respect to any

10    Distribution Date ***if either*** (i) ***on or after the Stepdown Date*** the

11    Sixty-Plus Delinquency Percentage, as determined on that

12    Distribution Date, exceeds 35.41% prior to the Distribution Date in

13    April 2012 or 40.00% on or after the Distribution Date in April 2012

14    of the current Senior Enhancement Percentage ***or*** (ii) ***on or after the***

15    ***Distribution Date in April 2009*** the aggregate amount of realized

16    losses allocated as a percentage of the Cut-Off Date aggregate stated

17    principal balance of the Mortgage Loans exceeds the values defined

18    below: [citing performance metrics]

19  *See* Free Writing Prospectus for RALI Q03 Notes at 13 (emphasis added).

20  For purposes of the Free Writing Prospectus, therefore, the Trigger Event

21  could occur ***either*** after a Stepdown Date ***or*** when the collateral

22  performance criteria were not met for any Distribution Date (i.e. interest or

23  principal payment date) that occurred after April 2009. Stated

24  affirmatively, if the collateral performance was deficient, under the Free-

25  Writing Prospectus a Trigger Event could occur as soon as April of 2009.

26  The definition was the same for the Q'06 Notes, but the specified date in

27  paragraph (ii) was July of 2008. PIMCO, for itself and on behalf of the

28             -20-

1   PIMCO Plaintiffs, relied on the definition of the Trigger Event in the free
2   writing prospectuses when it purchased the RALI Notes for the PIMCO
3   Plaintiffs.  In short, when the PIMCO Plaintiffs contracted to buy the RALI
4   Notes, they had received free writing prospectuses from Goldman Sachs
5   and RALI, and had received verbal and written communications from
6   Goldman Sachs and UBS, each of which conditioned the PIMCO Plaintiffs'
7   purchase of the RALI Notes on the fact that the RALI Notes would benefit
8   from a complete priority of payments of principal in the event the
9   delinquency triggers specified in the free-writing prospectus were met.

10          18.   For example, in a March 2008 email sent to PIMCO by a UBS
11   sales person prior to certain PIMCO Plaintiffs' purchase of over $400
12   million of Q'06 Notes from UBS, UBS represented to PIMCO that "one
13   important feature about this bond that differentiates it from similar super
14   senior pass throughs is that it has a Sequential Trigger….so after month 24
15   (in 4 months) if the bond is failing the delinquency triggers (currently
16   11.67% 60+delq., threshold is 3.56%), the AAA bonds which are currently
17   pro rata pay but will soon pay down sequentially."  This email confirmed
18   that the Trigger could happen "(in 4 months)," i.e. in July of 2008, the date
19   specified in the free writing prospectus for the Q'06 Notes.  It went on to
20   confirm that the Trigger Event would operate as was represented in the free
21   writing prospectus: "this bond basically becomes a front pay seq[uential]
22   and the rest of the deal *will be locked out*.  The subordination provision will
23   increase over time, *minimizing the credit risk* to the A1 holder." (emphasis
24   added).   In connection with the original purchase by certain PIMCO
25   Plaintiffs of the Q'03 Notes, Goldman Sachs sent PIMCO passwords to
26   permit it to access electronic models of the collateral performance that were
27   available on Intex.  The models Goldman Sachs permitted PIMCO to view

28                                          -21-

reflected the same concepts; namely, an early trigger date based upon a calendar date, and that in the event the delinquency triggers specified in the free-writing prospectuses were met, the RALI Notes would benefit from a priority of payments of principal, and the remaining bonds in the series would be locked out, and paid no principal, until they were paid in full.

19.    In reliance on the free-writing prospectus, and the other information it had received from Defendant Goldman Sachs, on March 21, 2006 certain of the PIMCO Plaintiffs purchased from Goldman Sachs over $150 million of A1 RALI Q'03 Notes underwritten by Goldman Sachs. This purchase was made in the initial offering of those notes, and is traceable directly to it.

20.    In reliance on the free-writing prospectus, and the other information it had received from Defendants Goldman Sachs and UBS, on March 5, 2008 certain of the PIMCO Plaintiffs purchased over $400 million of A1 RALI Q'06 Notes, originally underwritten by Defendant Goldman Sachs, from Defendant UBS.  This purchase was not made in the initial, single-issue offering of these notes, but the notes these PIMCO Plaintiffs purchased are traceable directly to that single-issue offering. No other notes of this series, or bearing this CUSIP number, have been issued since the initial offering of these notes

21. By the Spring of 2009, the performance of the collateral securing the RALI Notes had declined to the level required to create a "Trigger Event" as defined in the free-writing prospectuses.  The PIMCO Plaintiffs should, therefore, have begun to receive complete priority of payments of principal under the RALI Notes.  They have not.  Instead, despite the representations made in the free-writing prospectuses, the RALI Notes have

-22-

1  continued to make pro rata payments of principal, because the PSAs
2  governing payments by the Trustee do not provide for this priority.

3      22. The PSAs that govern the payments of principal by the Trustee do
4  *not*, it now appears, define a "Trigger Event" the same way as it is defined in
5  the free-writing prospectuses. Critically, as defined in the PSAs, a Trigger
6  Event does *not* occur on the collateral performance levels and dates specified
7  in the free-writing prospectuses. Instead, the PSAs define Trigger Event is
8  defined as follows:

9      **Trigger Event**: A Trigger Event is in effect with respect to any
10     Distribution Date *on or after the Stepdown Date* if (a) [mortgage
11     losses have reached specified levels on specified dates].

12 This definition of "Trigger Event" undermines its utility to A1 Noteholders.
13 By requiring a Stepdown Date to have occurred first, it is virtually
14 impossible for the A1 Notes to benefit from a Trigger Event, even though
15 that event exists to provide credit support for the A1 Notes. As written,
16 because a Stepdown Date must occur first, a Trigger Event will happen only
17 if: a) *no* Class A Notes are outstanding at all (for the Q'06 Notes), or, b) an
18 implausible "Senior Enhancement Percentage" has been met (for both the
19 Q'03 and the Q'06 Notes). Thus, the Trigger Event would occur either
20 when it was no longer needed, because the Class A Notes were reduced to
21 zero, or when it made no sense, because over half the loans would have paid
22 off with no losses. The PIMCO Plaintiffs would not have purchased the
23 RALI Notes, at the prices they paid for those Notes, had they known these
24 facts.

25     23. Upon learning of the inconsistency between the PSAs and the
26 free-writing prospectuses on which the PIMCO Plaintiffs had been
27 instructed to, and did, rely in buying over $550 million of RALI Notes,

28

FIRST AMENDED COMPLAINT
SACV09-1345 DOC (ANX)

1   PIMCO contacted Goldman Sachs, UBS, and Defendant RFC to insist that

2   its funds and clients be afforded the sequential, prioritized payments they

3   had been promised under the contracts.  In response to PIMCO's inquiries,

4   Defendant Goldman Sachs eventually published a legal notice in the Wall

5   Street Journal on July 7, 2009.  In that notice, Goldman Sachs stated that it

6   had "become aware of an inconsistency between the definition of 'Trigger

7   Event' in the Final Term Sheets" for the RALI Notes, on the one hand, "and

8   the Prospectus Supplements and Pooling and Servicing Agreements for the

9   respective transactions, on the other."   In this notice, Goldman Sachs

10  acknowledged that, as a result of what it termed "this discrepancy," "...

11  distribution payments to be made with respect to certain classes of

12  certificates for the respective transactions may not be consistent with the

13  structure described in the Term Sheets."[2]

14          24.   Although Goldman Sachs and UBS plainly intended to sell, and

15  the PIMCO Plaintiffs plainly intended to purchase, RALI Notes that had the

16  sequential payment rights described in the free writing prospectuses, and

17  although the sale of those securities to the PIMCO Plaintiffs was

18  "conditioned upon" the existence of those characteristics, PIMCO has not

19  received what it bargained for.  PIMCO has since requested that the RALI

20  Defendants provide an appropriate instruction to the Trustee, Deutsche

21  Bank, to direct it to adhere to the priority of payment provisions that all

22  parties had intended to govern the RALI Notes.  On information and belief,

23  Goldman Sachs also communicated with RFC and the Trustee to express its

24

25  [2] The phrase "Final Term Sheet" is sometimes used to refer to a free writing
26  prospectus.  The document discussed in the Goldman Sachs legal notice is
    the free writing prospectus at issue in this complaint.
27

28                                          -24-

1   own belief that the RALI Notes owned by the PIMCO Plaintiffs are—in
2   fact—entitled to priority of payment, that sequential principal payments
3   should be implemented, and that pro rata payment of all notes is no longer
4   appropriate because the delinquency triggers have been met.  The RALI
5   Defendants, however, declined to give such an instruction, and the Trustee
6   has declined to implement the sequential payments as required by the free
7   writing prospectus.

8       25.   The inability to obtain the priority of payment that the PIMCO
9   Plaintiffs were promised demonstrates the materiality of yet another
10  misrepresentation in the free-writing prospectuses.  Each of the prospectuses
11  stated that, in event of a conflict between the free-writing prospectus and the
12  registration statement, investors should rely on the free-writing prospectus.
13  This representation was materially misleading, because it failed to inform
14  investors that in the event of a conflict, the Trustee would be bound *not* by
15  the free-writing prospectus, but rather by the conflicting provisions of the
16  Pooling and Servicing Agreement.   The PIMCO Plaintiffs were thus
17  instructed to rely on a free-writing prospectus, and on a priority of
18  construction provision, that was utterly meaningless—because none of the
19  Defendants made sure that the same priority of payment and construction
20  provisions applied to the Trustee under the PSAs.

21      26.   As a result of the erroneous description of the Trigger Event in
22  the free-writing prospectuses, and the lack of super senior credit support for
23  the RALI Notes, the value of the RALI Notes held in the PIMCO Plaintiffs'
24  portfolios has declined significantly in value.  The losses attributable to this
25  misstatement are well in excess of $100 million.

26      27. Defendant Goldman Sachs does not dispute that there are material
27  misstatements in the free-writing prospectuses (and in the related written

28                                    -25-

1    representations) on which the PIMCO Plaintiffs relied in purchasing the
2    notes.

3        28.   Defendant UBS cannot credibly dispute that the RALI Notes it
4    offered to sell the PIMCO Plaintiffs were supposed to be super senior Notes
5    that would have the ability to "lock out" other tranches in four months, nor
6    can it credibly dispute that the RALI Notes it sold do not, in fact, have that
7    characteristic.

8        29.  As the underwriter, Defendant Goldman Sachs was obliged to
9    exercise reasonable diligence to ensure that the priority of payment and
10   construction provisions in the free-writing prospectus represented accurately
11   and fairly the terms of the PSAs, particularly as it pertained to the credit
12   support and payments of principal under the Notes.  Defendant Goldman
13   Sachs could, and should, have discovered the inconsistency between the
14   priority of payment provisions in the PSAs and those in the free-writing
15   prospectus through the exercise of reasonable diligence prior to offering
16   these notes to the PIMCO Plaintiffs, and prior to the PIMCO Plaintiffs'
17   purchase of the notes.  It also could, and should, have discovered that the
18   priority of construction provision on which investors were instructed to rely
19   in the free-writing prospectus was *not* contained in the PSAs themselves, a
20   material omission that rendered this construction provision wholly illusory.
21   The same is true of the RALI Defendants.  As the issuers, they were required
22   to disclose accurately all of the terms and characteristics of the notes they
23   were issuing and selling.  The RALI Notes simply do not have the credit
24   support they were represented to have, and the representations that they had
25   such support were materially misleading and flatly wrong.

26       30. Notes that have credit support sell and trade for prices higher than
27   notes that lack credit support.  Notes that have a priority right to payments of

28                                    -26-

1   principal likewise sell and trade for prices higher than securities whose right
2   to payment is subordinated.  Credit support and priority payment rights are
3   highly material to investors who buy securitized notes, and these provisions
4   were particularly material to the PIMCO Plaintiffs' purchase of the RALI
5   Notes.  When it became clear to the market that the RALI Notes would not
6   benefit from the credit support and priority of principal payment rights that
7   the free-writing prospectuses represented they had, the price of the RALI
8   Notes dropped significantly.   This drop in price was the direct result of the
9   material misstatements in the free-writing prospectuses, and in the related
10   oral and written misstatements by the Defendants.  The misstatements, and
11   the revelation of the true facts, caused the PIMCO Plaintiffs to sustain well
12   over $100 million in damages.

13       31.  The PIMCO Plaintiffs, therefore, have been forced to file suit to
14   rescind their purchases of these notes.  It is undisputed that all parties to the
15   PIMCO Plaintiffs' contracts to purchase the RALI Notes were mutually
16   mistaken as to the credit support and sequential payment characteristics the
17   Notes enjoyed.   The PIMCO Plaintiffs have also suffered substantial
18   damages, well in excess of $100 million, because they have received the
19   priority of principal payments they were promised, and because the free-
20   writing prospectuses—on which the PIMCO Plaintiffs relied in buying these
21   notes—materially misstate the terms of the PSAs and the credit support for
22   the RALI Notes.  The conflict between the free-writing prospectuses, on the
23   one hand, and the registration statement and PSAs, on the other, rendered the
24   free-writing prospectuses materially misleading, in violation of applicable
25   federal and state securities laws.  The Defendants failure to deliver notes that
26   had the characteristics promised in the contracts also constitutes a failure of

27

28                                                -27-

a condition precedent, and is the result of a mutual mistake, such that the PIMCO Plaintiffs are entitled to rescind their purchases of the RALI Notes.

## CAUSES OF ACTION

### Count I:

### Section 12(2) of the Securities Act of 1933 against
### the RALI Defendants and Goldman Sachs

32.    Plaintiffs incorporate as if fully set forth here the facts and allegations contained in this Complaint.

33.    The RALI Defendants and Defendant Goldman Sachs violated §12(2) of the Securities Act of 1933 because they offered and sold the RALI Notes to the PIMCO Plaintiffs by means of materially misleading written promotional materials,  misleading prospectuses, and misleading oral communications.

34.    In the course of their sale of the RALI Notes to the PIMCO Plaintiffs, these Defendants also made untrue statements of material fact and omitted to state material facts necessary in order to make their statements, in light of the circumstances under which they were made, not misleading at the time those statements were made.

35.    Each of these Defendants at various times has also made or assisted the other Defendants in making the untrue statements and omissions of material fact enumerated above in connection with the offer and sale of the RALI Notes to the PIMCO Plaintiffs.  As a result of all of the material misrepresentations and omissions of these Defendants, the PIMCO Plaintiffs were induced to purchase the Notes.

36.    These Defendants' actions were a violation of §12(2) of the Securities Act of 1933.  When the true facts concerning the lack of credit support for the RALI Notes were revealed, the price of the notes fell

-28-

1  significantly and caused the PIMCO Plaintiffs to sustain massive damages.

2  The PIMCO Plaintiffs' losses were a direct result of, and were caused by,

3  the misstatements, omissions, and half-truths concerning the credit support

4  for the RALI Notes.

5       37.    The PIMCO Plaintiffs accordingly seek to recover the full

6  amount of the damages they have sustained in accordance with the formula

7  set out in Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77(l)(2).

8  All of the losses the PIMCO Plaintiffs sustained on these Notes were caused

9  by the Defendants' material misstatements and omissions.   The PIMCO

10  Plaintiffs' losses were not caused by any intervening circumstances.

**Count II:**

**Section 11 of the Securities Act of 1933 against**

**the RALI Defendants and Goldman Sachs**

14       38.    The PIMCO Plaintiffs incorporate as if fully set forth here the

15  facts and allegations contained in this Complaint.

16       39.    The free-writing prospectuses on which the PIMCO Plaintiffs

17  relied in purchasing the RALI Notes are issued pursuant to, and were

18  incorporated in, a shelf registration statement used by RALI for the purpose

19  of issuing these and other notes.

20       40.    The registration statement, and the free-writing prospectuses,

21  contain untrue statements of material fact concerning the credit support for

22  the RALI Notes, and omitted to state material facts concerning the lack of

23  credit support, that were necessary in order to make their statements, in light

24  of the circumstances under which they were made, not misleading at the

25  time those statements were made.   The registration statement and the free-

26  writing prospectuses also contained materially misleading provisions

27  concerning which document would govern in the event of a conflict between

-29-

1   the free-writing prospectus, on the one hand, and the registration and PSAs
2   on the other.

3       41.   The actions of the RALI Defendants and Goldman Sachs in
4   including material misstatements, omissions, and half-truths in the free-
5   writing prospectuses and the registration statements were a violation of
6   Section 11 of the Securities Act of 1933.

7       42.   The PIMCO Plaintiffs were not aware of these
8   misrepresentations, omissions, and half-truths concerning the credit support
9   for the RALI Notes when they purchased them. The PIMCO Plaintiffs
10  would not have purchased the RALI Notes at the prices they paid for them
11  had PIMCO known of the true facts concerning their lack of credit support
12  and the fact that the Notes did not, as represented, have priority of payment
13  rights over other classes of RALI securities.

14      43.   The price the PIMCO Plaintiffs paid for the RALI Notes was
15  not the price at which the Notes could have been sold had the lack of credit
16  support, and the true facts concerning the Notes' priority of payment rights,
17  been disclosed and described accurately in the free-writing prospectuses.
18  When the true facts concerning the lack of credit support and the far more
19  limited priority of payment rights were revealed, the price of the notes fell
20  significantly, and caused the PIMCO Plaintiffs to sustain massive damages.
21  The PIMCO Plaintiffs' losses were a direct result of, and were caused by,
22  the misstatements, omissions, and half-truths concerning the credit support
23  and priority of payments rights of the RALI Notes.

24      44.   The PIMCO Plaintiffs accordingly seek to recover the full
25  amount of the damages they have sustained in accordance with the formula
26  set out in Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k. All of
27  the losses the PIMCO Plaintiffs sustained on these RALI Notes were caused

28                                    -30-

1   by the Defendants' material misstatements and omissions.   The PIMCO
2   Plaintiffs' losses were not caused by any intervening circumstances.   All of
3   the RALI Notes the PIMCO Plaintiffs bought are directly traceable to the
4   free-writing prospectuses and registration statement at issue.

**Count III:**

**California Corporations Code Sections 25401, 25501, and 25504**

**Against All Defendants**

8       45.   The PIMCO Plaintiffs incorporate as if fully set forth here the
9   facts and allegations contained in this Complaint.

10       46.   In connection with the issuance, offer and sale of the RALI
11   Notes by the Defendants, the Defendants prepared and distributed
12   prospectus materials that purported to describe the material facts regarding
13   the securities and the terms of their distribution.   Copies of the prospectus
14   materials were transmitted to the PIMCO Plaintiffs in the State of California
15   in connection with the issuance, offer and sale of the RALI Notes.

16       47.   Defendants included material, untrue statements in the
17   prospectus materials transmitted to the Plaintiffs as described above.

18       48.   In connection with the issuance, offer and sale of the RALI
19   Notes, the Defendants also made statements and representations to the
20   PIMCO Plaintiffs in other written and oral presentations that purported to
21   describe the material facts regarding the RALI Notes.   These statements
22   included the material, untrue facts as described above.

23       49.   In connection with the issuance, offer and sale of the RALI
24   Notes, Defendants and their agents omitted facts necessary in order to make
25   the above-described statements, in the light of the circumstances under
26   which they were made, not misleading.

-31-

50.    The Defendants' statements in the prospectus materials, and in statements that were separate from the prospectus materials, constituted offers to sell in California or a solicitation in California of an offer to buy the RALI Notes, and the untrue statements and omissions of material facts contained in the prospectus materials and the separate statements were made in the course of the issuance and offering to sell the RALI Notes by Defendants.

51.    By reason of the facts set out above, Defendants violated California Corporations Code Section 25401 in the offering and sale to the PIMCO Plaintiffs of each of the Notes sold by the Defendants to PIMCO Plaintiffs.

52.    By reason of the Defendants' violation of California Corporation Code Section 25401, the PIMCO Plaintiffs are entitled under Corporation Code Section 25501 to recover rescissory damages from the Defendants who qualify as statutory "sellers" in an amount calculated as the difference between (a) the prices at which the securities were bought plus interest at the legal rate from the dates of purchase and (b) the value of the securities at the time they were disposed of by the PIMCO Plaintiffs (or if still possessed by the PIMCO Plaintiffs, the value as of the date of the filing of this lawsuit) plus the amounts of any income received on the securities by the the PIMCO Plaintiffs.

53.    To the extent that certain Defendants were not statutory "sellers" for one or more of the PIMCO Plaintiffs' purchases, each such Defendant (i) directly or indirectly controlled the statutory "seller" Defendant and/or (ii) was a broker-dealer or agent who materially aided in the act or transaction constituting the violation.  All such Defendants had knowledge or reasonable grounds to believe in the existence of facts

-32-

1 establishing the material misrepresentations or omissions underlying the

2 statutory "seller" Defendants' liability under Section 25501.  By reason of

3 the above facts, each such Defendant is jointly and severally liable with the

4 statutory "seller" Defendants under Corporations Code Section 25504 for the

5 violation of Section 25401.  The PIMCO Plaintiffs are therefore entitled to

6 rescissory damages as described above from all Defendants, not merely the

7 statutory "seller" Defendants from whom they purchased the RALI Notes.

8 **Count IV:**

9 **Common Law Negligent Misrepresentation against All Defendants**

10 54.    The PIMCO Plaintiffs incorporate as if fully set forth here the

11 facts and allegations contained in this Complaint.

12 55.    As described herein, each of the Defendants is also liable to the

13 PIMCO Plaintiffs in damages for committing negligent misrepresentations

14 by supplying materially false information to the PIMCO Plaintiffs in

15 connection with the offer and sale of the Notes to the PIMCO Plaintiffs.

16 56.    The Defendants furnished the prospectus materials and other

17 written and oral information to the PIMCO Plaintiffs.  Defendants prepared

18 these documents and and/or distributed them to a known, limited class of

19 potential investors, including the PIMCO Plaintiffs, in order to induce them

20 to buy the RALI Notes.  The PIMCO Plaintiffs are therefore reasonably

21 foreseeable recipients of the prospectus materials and other representations

22 and part of the known and identifiable class whom Defendants knew or had

23 reason to know were likely to rely on the Defendants' misrepresentations.

24 57.    The PIMCO Plaintiffs received the prospectus materials and

25 other written and oral presentations from Defendants before investing in the

26 RALI Notes for this proper business purpose; namely, making an investment

27 in the Notes.  The PIMCO Plaintiffs also received the other oral and written

28 -33-

1  misstatements from the Defendants, and were subject to the materially

2  misleading omissions of the Defendants as set out above, in connection with

3  the same proper, business purpose.

4      58.    The Defendants each had a business interest in the transaction

5  by which the RALI Notes were sold to the PIMCO Plaintiffs.    Each

6  Defendant had a duty to provide the PIMCO Plaintiffs with materially

7  accurate information, and each had a duty not to misrepresent the terms of

8  the offerings or the Notes.    However, each Defendant failed to exercise

9  reasonable care in connection with the issuance and sale of the Notes,

10  including the preparation, presentation and dissemination of the prospectus

11  materials and other written information provided to the PIMCO Plaintiffs.

12      59.    In addition, all the Defendants failed to exercise reasonable care

13  in making the oral and written representations to the PIMCO Plaintiffs.

14      60.    Each of the Defendants had a substantial pecuniary interest in

15  the sale of the RALI Notes, because all stood to receive substantial personal

16  gain if the transaction closed.

17      61.    Defendants acted at least negligently by making the various

18  untrue statements of material facts and omitting to state in full detail the

19  facts necessary in order to make the statements they made, as described

20  above, not misleading.

21      62.    The untrue statements and omissions detailed above in the

22  prospectus materials and the other written and oral presentations were

23  material in that they related to matters that would have been of importance

24  or significance in the PIMCO Plaintiffs' decision whether to purchase the

25  Notes.    Furthermore, the PIMCO Plaintiffs would have viewed the

26  disclosure of the true facts as significantly altering the total mix of

27  information available.

28                              -34-

63.     The Defendants also acted with gross negligence when they made the misrepresentations, and omitted to state in full detail the material facts set out above.

64.     At the time of such misrepresentations and omissions of material facts, the PIMCO Plaintiffs were ignorant of their falsity and believed them to be true. The PIMCO Plaintiffs foreseeably relied upon the superior knowledge and expertise of Defendants, and justifiably relied, to their detriment, on the misrepresentations and omissions made by the Defendants. Had the PIMCO Plaintiffs been aware of the truth, they would not have purchased the RALI Notes.

65.     The PIMCO Plaintiffs are therefore entitled to recover from the Defendants all of the damages for the losses Plaintiffs sustained as a result of their reliance on the Defendants' negligent misrepresentations and omissions of the facts pertinent to the RALI Notes.

## Count V

### Rescission and Failure of Condition Precedent

66.     The PIMCO Plaintiffs incorporate by reference all of the prior allegations in this complaint.

67.     The PIMCO Plaintiffs' purchase of the RALI Notes was expressly "conditioned on the securities having the characteristics described in" the free writing prospectuses.

68.     The PIMCO Plaintiffs purchased RALI A1 Q'03 Notes directly from Goldman Sachs on the understanding that these Notes had the sequential payment characteristics described in the free writing prospectus. These sequential payment rights were a material part of the bargain, and went to the heart of the consideration for the PIMCO Plaintiffs' purchase of the Notes. Goldman Sachs shared the PIMCO Plaintiffs' understanding and

-35-

1    intent concerning the required characteristics of the Notes at the time the
2    contract to purchase was made.

3        69.    The PIMCO Plaintiffs also purchased RALI A1 Q'06 Notes
4    directly from UBS on the understanding that these Notes had the sequential
5    payment characteristics described in the free writing prospectus, including
6    the right to "lock out" other tranches in as soon as four months.  These
7    sequential payment rights were a material part of the bargain, and went to
8    the heart of the consideration for the PIMCO Plaintiffs' purchase of the
9    Notes.  UBS shared the PIMCO Plaintiffs' understanding and intent
10   concerning the required characteristics of the Notes at the time the contract
11   to purchase was made.

12       70.    Goldman Sachs and the PIMCO Plaintiffs, and UBS and the
13   PIMCO Plaintiffs, were each mistaken as to this material fact that was a
14   basic assumption of the contracts.  The contracts pursuant to which the
15   Notes were sold to the PIMCO Plaintiffs did not impose the risk of mistake
16   on the PIMCO Plaintiffs, nor did they make the mistake due to its neglect of
17   a legal duty.  To the contrary, the PIMCO Plaintiffs made the mistake
18   because—as instructed by the contracts of sale—PIMCO read and relied
19   upon the description of the Trigger Event contained in the free writing
20   prospectus in purchasing the RALI Notes for the PIMCO Plaintiffs.

21       71.    As described above, contrary to the contract terms, the RALI
22   Notes do not enjoy super senior status, nor do they have the sequential
23   payment rights and characteristics all parties believed they had when the
24   PIMCO Plaintiffs bought the Notes.  The Notes that these Defendants sold,
25   and that the PIMCO Plaintiffs bought, did not exist; instead, as a result of a
26   mutual mistake of the parties, the Notes the Defendants sold and that the
27   PIMCO Plaintiffs bought are *not* super senior notes, and they do *not* have

28                   -36-

1 the sequential payment rights and characteristics on which the PIMCO

2 Plaintiffs' purchase was conditioned.   If these facts had been known the

3 parties, there would have been no contract.   The PIMCO Plaintiffs are

4 therefore entitled to rescind their purchase, in full, for all of the Notes they

5 still hold.  They are also entitled to recover their actual losses sustained on

6 the Notes they purchased but later sold.

7     72.   The failure of these facts and characteristics to exist is also a

8 failure of a condition precedent, which again entitles the PIMCO Plaintiffs

9 to rescind their purchases and to recover their actual losses on the Notes they

10 sold.

11 **Count VI**

12 **Unilateral Mistake Rescission and Damages**

13     73.   The PIMCO Plaintiffs incorporate in this count its allegations in

14 the above paragraphs.

15     74.   In the alternative to its claim of mutual mistake, the PIMCO

16 Plaintiffs allege that they were unilaterally mistaken regarding a basic

17 assumption on which they made the contract; specifically, the belief

18 (fostered by the plain words of the contracts and the Intex models) that the

19 RALI Notes had the sequential payment characteristics described in the free

20 writing prospectuses.  That unilaterally mistaken belief was reinforced, for

21 the UBS purchase, by the UBS email reiterating that the sequential payment

22 characteristics could "lock out" junior tranches "in four months," i.e. in July

23 of 2008.  The PIMCO Plaintiffs' unilateral mistake materially affected the

24 agreed exchange of consideration and performance of the contracts in a way

25 that was materially adverse to the PIMCO Plaintiffs, in that they paid for

26 super senior notes with sequential payment rights, but received notes that are

27 merely *pari passu* with other senior tranches.

28 -37-

75.     The contracts pursuant to which the PIMCO Plaintiffs purchased these notes did not impose the risk of this mistake on them, and they were mistaken as to what it was purchasing despite the exercise of ordinary care.  Indeed, it was the PIMCO Plaintiffs' exercise of ordinary care that led to the mistake, because (as it was instructed to do) PIMCO read and relied on the free writing prospectus in deciding to purchase the Notes from Goldman Sachs and UBS.  The effect of this mistake is so catastrophic and unintended that to enforce it against the PIMCO Plaintiffs (by forcing them to retain notes they never intended to purchase) would be unconscionable.     Importantly, the RALI Defendants, as Issuers, and Goldman Sachs, as underwriter of the RALI Notes, each had a legal duty to inform itself concerning the *true* and *governing* terms of the Pooling and Servicing Agreement, and to ensure that those terms were stated accurately in the prospectus and the free writing prospectus.  Goldman Sachs and the RALI Defendants each failed to do so.  Indeed, Goldman Sachs' legal notice establishes this breach of Goldman Sachs' legal duty, because it acknowledged that Goldman Sachs "became aware of" the discrepancy *after* the RALI Notes were issued and sold, even though it had a duty to investigate and discover that discrepancy *before* the Notes were sold.

76.     The status quo ante can be restored by permitting the PIMCO Plaintiffs to rescind the purchase of the notes (or by reimbursing them for the losses suffered on those notes they sold).

### Count VII: Hawaii Securities Act, Section 482-20

77.     The PIMCO Plaintiffs incorporate as if fully set forth here the facts and allegations contained in this Complaint.  The conduct of the Defendants also violated Hawaii Securities Act Section 485-25.

-38-

78.     Each of the Defendants, in connection with the offer and sale of the Notes, made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made not misleading.

79.     These statements and omissions were material in that they related to matters that would have been of importance or significance in certain PIMCO Plaintiffs' decision whether to purchase the Notes.  Furthermore, the disclosure of the truth would have been viewed by these plaintiffs as significantly altering the total mix of information available.

80.     The PIMCO Plaintiffs reasonably and justifiably relied upon these Defendants' material misrepresentations and omissions in deciding to buy the Notes.

81.     As a proximate result of the material misrepresentations and omissions of Defendants, the PIMCO Plaintiffs were damaged and are entitled to rescind or recover their damages from each of the Defendants.

82.     Pursuant to Hawaii Securities Act, Section 485-20, the PIMCO Plaintiffs hereby tender all the Notes that they own to the Defendants and each of them.  This tender is for the purchase price, plus interest, plus court costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

The PIMCO Plaintiffs respectfully submit that, upon trial by jury, they are entitled to rescind their purchase of these notes, or alternatively to recover their actual damages sustained, as a result of the mutual mistake in their contracts to purchase the RALI Notes, the failure of a condition precedent to their purchase, their alternative claim of unilateral mistake, and the material misstatements in the prospectus, the registration statement, and

-39-

1  the written and oral representations made to the PIMCO Plaintiffs.   The

2  PIMCO Plaintiffs also request such other relief to which they may show

3  themselves to be entitled, including costs of court, attorneys' fees, and pre-

4  and post-judgment interest as allowed by law.

5

6  DATED:  November 16, 2009          KNEAFSEY TOSTADO & ASSOCIATES
                                       LLP
7

8

9                                      By

10                                        Sean Kneafsey

11                                     Attorneys for the Plaintiffs

12

13      Co-Counsel:

14      Kathy Patrick
        Scott Humphries
15      GIBBS & BRUNS LLP
        1100 Louisiana Suite 5300
16      Houston, TX 77002
        (713) 650-8805
17      Fax:  (713) 750-0903

18

19

20

21

22

23

24

25

26

27

28                          -40-

1

## **DEMAND FOR JURY TRIAL**

2

3        Plaintiff hereby demands a jury trial pursuant to Rule 38 of the

4  Federal Rules of Civil Procedure as to all issues in this lawsuit.

5

6  DATED:  November 16, 2009            KNEAFSEY TOSTADO & ASSOCIATES
                                        LLP
7

8

9                                       By _____
                                            Sean Kneafsey
10

11                                      Attorneys for Plaintiffs

12        Co-Counsel:

13

14        Kathy Patrick
          Scott Humphries
15        GIBBS & BRUNS LLP
          1100 Louisiana Suite 5300
16        Houston, TX 77002
          (713) 650-8805
17        Fax:  (713) 750-0903

18

19

20

21

22

23

24

25

26

27

28                          -41-

# EXHIBIT A

## EXHIBIT "A"

## THE "PIMCO PLAINTIFFS"

Plaintiff PIMCO FUNDS is an open-end investment company with its principal place of business in Newport Beach, California. The following separate investment portfolios of PIMCO FUNDS are included in this litigation: Foreign Bond Fund (U.S. Dollar-Hedged), Foreign Bond Fund (Unhedged), High Yield Fund, International StocksPLUS TR Strategy Fund, Japanese StocksPLUS TR Strategy Fund, Real Return Fund, Real Return Asset Fund, RealEstateRealReturn Strategy Fund, Short-Term Fund, Total Return Fund, Total Return Mortgage Fund, Asset-Backed Securities Portfolio, U.S. Government Sector Portfolio, Global Bond Fund (Unhedged), Global Bond Fund (U.S. Dollar-Hedged), International Portfolio, Mortgage Portfolio, and Income Fund.

Plaintiff PIMCO Variable Insurance Trust ("PVIT") on behalf of its Foreign Bond Portfolio and its Global Bond Portfolio is an open-end investment company with its principal place of business in Newport Beach, California.

Plaintiff Allianz Global Investors Luxembourg S.A. for itself and on behalf of Allianz PIMCO CommoditiesPLUS is an entity incorporated under the laws of the Grand Duchy of Luxembourg with its principal place of business in Luxembourg.

Plaintiff Wilmington Trust Retirement and Institutional Services Company acting as Trustee of the Wilmington Trust Retirement and Institutional Services Company Collective Investment Trust and its PIMCO CommoditiesPLUS Trust II fund is a Delaware State Banking corporation with its principal place of business in Phoenix, Arizona.

Plaintiff Fixed Income Shares for itself and on behalf of its separate investment portfolios Series C and Series R is an open-end management investment company organized as a Massachusetts business trust having its principal place of business in New York, New York.

Plaintiff PIMCO Absolute Return Strategy V Alpha Fund is a series trust of PIMCO Offshore Funds.

Plaintiff PIMCO Global Relative Value Offshore Fund III Ltd. is an exempted company organized under the laws of the Cayman Islands.

Plaintiff PIMCO PensionPLUS Fund LLC is a Delaware limited liability company with its principal place of business in Newport Beach, California.

Plaintiff PARS Aspire Fund is an investment company incorporated under the laws of the Grand Duchy of Luxembourg with its principal place of business in Luxembourg.

Plaintiffs PIMCO Absolute Return Strategy II Offshore Fund Ltd., PIMCO Absolute Return Strategy III Offshore Fund Ltd., and PIMCO Absolute Return Strategy V Offshore Fund Ltd. are each Cayman Islands exempted companies.

Plaintiff Brown Brothers Harriman Trust Company (Cayman) Limited as trustee for PIMCO Bermuda Trust I, an open-ended unit trust established under the laws of Bermuda, and its series trusts, PIMCO Bermuda Foreign Low Duration Fund and PIMCO Bermuda JGB Floater Foreign Alpha Fund.

Plaintiff Brown Brothers Harriman Trust Company (Cayman) Limited as trustee for PIMCO Bermuda Trust II, an open-ended unit trust established under the laws of Bermuda, and its series trusts, PIMCO Bermuda LIBOR Plus Master Fund, PIMCO

Bermuda JGB Floater U.S. Strategy Fund and PIMCO Bermuda JGB Floater Foreign Strategy Fund.

Plaintiff Brown Brothers Harriman Trust Company (Cayman) Limited as trustee for PIMCO Bermuda Trust IV, an open-ended unit trust established under the laws of Bermuda, and its series trusts, PIMCO Bermuda Global Bond Ex-Japan Fund, PIMCO Bermuda Japan Core PLUS Fund, and PIMCO Global High Yield Strategy Fund.

Plaintiff Brown Brothers Harriman Trust Company (Cayman) Limited as trustee for PIMCO Cayman Trust, an open-ended unit trust established under the laws of Bermuda, and its series trusts, PIMCO Cayman Global Aggregate Ex-Japan Bond Fund, PIMCO Cayman Global Aggregate Ex-Japan Income Fund, PIMCO Cayman Global Aggregate Ex-Japan, PIMCO Cayman Global Ex-Japan Bond Fund, PIMCO Cayman Global Ex-Japan (Yen-Hedged) Bond Fund, PIMCO Cayman Global Multiple Real Return Fund, PIMCO Cayman Japan CorePLUS Fund, PIMCO Cayman Japan Low Duration Fund, and PIMCO Cayman TOPIX Plus Fund.

Plaintiff PIMCO Strategic Global Government Fund, Inc. is a Maryland corporation with its principal place of business in New York, New York.

Plaintiff PIMCO Luxembourg S.A. on behalf of PIMCO Luxembourg Trust and its sub-funds, Global Bond Fund (NOK Hedged), Global StocksPLUS TR Fund in Euros, and Commodity Real Return Strategy Fund is an entity with its principal place of business in Luxembourg.

Plaintiff PIMCO Distressed Mortgage Fund, L.P. is a Delaware Limited partnership.

Plaintiff PIMCO Australia Pty Ltd. for itself and on behalf of its clients is an entity with its principal place of business in Sydney Australia.

Plaintiff PIMCO Europe Ltd., a UK limited liability company whose registered office is in London, Great Britain.

PIMCO Global Advisors Limited for itself and on behalf of its Global Investor Series ("GIS") Global Bond, GIS Global Bond Ex-US, GIS Global Real Return, GIS CommoditiesPLUS Strategy Fund, and GIS Mortgage-Backed Securities Fund is a company incorporated under the laws of Ireland having its registered office in Dublin, Ireland.

Plaintiff BNY Fund Management (Cayman) Limited as trustee for PIMCO Japan Low Duration Alpha Fund, is an entity with its principal place of business in Tokyo, Japan.

Plaintiff Abu Dhabi Retirement Pensions and Benefit Fund is a public institution organized under the laws of the Emirate of Abu Dhabi, U.A.E with its principal place of business in Abu Dhabi, U.A.E.

Plaintiff Julius Baer Investment Fund Services Ltd. for itself and on behalf of AFP Unilever Schweiz, a Swiss umbrella fund, is a limited liability company organized under Swiss law with its principal place of business in Cham, Switzerland.

Plaintiff Allianz Insurance Limited for itself and on behalf of Allianz Hedge Portfolio is an insurance company organized under the laws of Australia with its principal place of business in Sydney, Australia.

Plaintiff Ameren Services Company for itself and on behalf of Ameren Retirement Plan and Ameren Master Retirement Trust is a Missouri corporation with its principal place of business in Springfield Illinois.

Plaintiff Ingersoll Rand Company Limited and its wholly owned subsidiary Trane, successor to American Standard, Inc., for itself and on behalf of American Standard Master Pension and Retirement Trust, a trust with its principal place of business in Piscataway, New Jersey.

Plaintiff Ariel Reinsurance Company Ltd. for itself and on behalf of its Low Duration account is a corporation organized under the laws of Bermuda with its principal place of business in Hamilton, Bermuda.

Plaintiff Artsfare 2006 Trust No. 1 is a trust with its principal place of business in New York, New York.

Plaintiff Prudential Investments LLC, a New York limited liability company, and American Skandia Investment Services, Inc., a Maryland corporation, as co-managers for and on behalf of American Skandia Trust (AST Advanced Strategies Portfolio), a Massachusetts trust with its principal place of business in Newark, New Jersey.

Plaintiffs Automobile Club of Michigan and Auto Club Insurance Association for themselves and on behalf of Automobile Club of Michigan and Auto Club Insurance Association Retirement Plan for Salaried and Sales Employees respectively are Michigan corporations each having its principal place of business in Dearborn, Michigan.

Plaintiff AXIS Specialty Limited is a company organized under the laws of Bermuda with its principal place of business in Pembroke, Bermuda.

46

Plaintiff Baxter International Inc. for itself and on behalf of Baxter International Inc. and Subsidiaries Incentive Investment Plan Trust is a Delaware corporation with its principal place of business in Deerfield, Illinois.

Plaintiff BayCare Health System is a Florida corporation with its principal place of business in Clearwater, Florida.

Plaintiff Verizon Communications, Inc., successor to Bell Atlantic Corporation, for itself and on behalf of Bell Atlantic Master Pension Trust is a Delaware corporation with its principal place of business in Basking Ridge, New Jersey.

Plaintiff Brunei Shell Funds Sendirian Berhad as trustee of Brunei Shell Provident Fund and Brunei Shell Retirement Benefit Fund is an entity with its principal place of business in Brunei Darussalam.

Plaintiff Trustees of The Civil Aviation Authority Pension Scheme on behalf of the Civil Aviation Authority Pension Scheme's ABS Portfolio and Swap Overlay Account is an entity with its principal place of business in London, Great Britain.

Plaintiff Capital Guidance (Fund) Ltd. is an entity with its principal place of business in Geneva, Switzerland.

Plaintiff Catholic Healthcare Partners for itself and on behalf of Catholic Healthcare Partners Retirement Trust is an Ohio non-profit corporation with its principal place of business in Cincinnati, Ohio.

Plaintiff Smith Barney Fund Management LLC on behalf of Consulting Group Capital Markets Funds and its series International Fixed Income Investments, a Massachusetts Business Trust with its principal place of business in Wilmington, Delaware.

47

Plaintiff City University of Hong Kong is an entity with its principal place of business in Kowloon, Hong Kong.

Plaintiff Civil Aviation Authority of Singapore is an entity organized under the laws of Singapore with its principal place of business in Singapore.

Plaintiff The Consolidated Edison Retirement Plan Master Trust is a trust with its principal place of business in New York, New York.

Plaintiff Board of Retirement of the Contra Costa County Employees' Retirement Association on behalf of the Contra Costa County Employees' Retirement Association (StocksPLUS), a trust organized under California law with its principal place of business in Concord, California.

Plaintiff Ascension Health for itself and on behalf of Daughters of Charity Fund P is a Missouri non-profit corporation with its principal place of business in St. Louis, Missouri.

Plaintiff Allianz Global Investors Kapitalanlagegesellschaft mbH on behalf of Deutsche Shell Pensionen, is an entity with its principal place of business in Hamburg, Germany.

Plaintiff Deutsche Bank Americas Holding Corp. for itself and on behalf of Deutsche Bank Cash Account Pension Plan is a Delaware corporation with its principal place of business in New York, New York.

Plaintiff Finance Committee of the Board of Trustees of the Directors Guild of America for itself and on behalf of Producer Basic Pension Plan and Producer Supplemental Pension Plan, each a trust having its principal place of business in Los Angeles, California.

Plaintiff Doris Duke Charitable Foundation is an entity with its principal place of business in New York, New York.

Plaintiff Employees' Retirement Plan of Sentara Health Care is a trust with its principal place of business in Norfolk, Virginia.

Plaintiff Enlightenment Partners is an entity with its principal place of business in Portland, Oregon.

Plaintiff Ewing Marion Kauffman Foundation is an entity with its principal place of business in Kansas City, Missouri.

Plaintiff Fairfax County Employees' Retirement System is a trust with its principal place of business in Fairfax, Virginia.

Plaintiff Fairfax County Uniformed Retirement System is a trust with its principal place of business in Fairfax, Virginia.

Plaintiff Profit Sharing Committee of Freescale Semiconductor, Inc. for itself and on behalf of Freescale Semiconductor Inc. Retirement Savings Trust is a Delaware corporation with its principal place of business in Austin, Texas

Plaintiff Frontier Communications Corporation Pension Plan for itself and as successor to Citizens Utilities Pension Plan is a trust with its principal place of business in Stamford, Connecticut.

Plaintiff Fundo de Pensoes is an entity with its principal place of business in Caixa Postal, Macao.

Plaintiff Fortis Insurance Belgium, *nka* AG insurance, on behalf of G.A. Fund-L-SICAV – Bond Active World TP, is an entity with its principal place of business in Brussels, Belgium.

Plaintiff Promark Global Advisors Limited, formerly GM Asset Management (UK) Limited, for itself and on behalf of GM International Fixed Interest Bonds PFPV, a unit trust organized under English law with its principal place of business in Luton, Great Britain.

Plaintiff Promark Investment Advisors Limited, formerly General Motors Investment Management Corporation, for itself and on behalf of GMAM Group Pension Trust I Multi Sector – US/Foreign, GMAM Group Pension Trust II, and GMAM Group Trust I is a corporation with its principal place of business in New York, New York.

Plaintiff Harbor Capital Advisors, Inc. for itself and on behalf of Harbor Real Return Fund is a Delaware investment corporation with its principal place of business in Chicago, Illinois.

Plaintiff Hartford Life Insurance Co. (Separate Account ICM Series IV) is a corporation organized under Connecticut law with its principal place of business in Florham Park, New Jersey.

Plaintiff Employees' Retirement System of the State of Hawaii for itself and on behalf of Hawaii Employees' Retirement System and Hawaii Employees' Retirement System Global Portfolio (501542096) is an entity organized under Hawaii law with its principal place of business in Honolulu, Hawaii.

Plaintiff Hong Kong Polytechnic University is an entity with its principal place of business in Hong Kong.

Plaintiff IBM Corporation for itself and on behalf of IBM Savings Plan is a New York corporation with its principal place of business in White Plains, New York.

Plaintiff IBM Corporation for itself and on behalf of IBM Personal Pension Plan Trust is a New York corporation with its principal place of business in White Plains, New York.

Plaintiff IBM Retirement Funds EMEA (RFE) for itself and on behalf of IBM Global Strategy Fund, an umbrella unit trust organized under the laws of Ireland with its principal place of business in Portsmouth, Great Britain.

Plaintiff Intermountain Health Care Health Services Inc. for itself and on behalf of IHC Pension Plan is a Utah corporation with its principal place of business in Salt Lake City, Utah.

Plaintiff Illinois State Universities Retirement System is a trust organized under Illinois law with its principal place of business in Champaign, Illinois.

Plaintiff Indiana State Teachers' Retirement Fund is a public pension fund organized under Indiana law with its principal place of business in Indianapolis, Indiana.

Plaintiff IPAC Asset Management Limited for itself and on behalf of IPAC Multi-Manager Global Bond Fund is an entity with its principal place of business in Melbourne, Australia.

Plaintiff J Sainsbury Common Investment Fund Limited is a private company with its principal place of business in London, Great Britain.

Plaintiff J.C. Penney Company, Inc. for itself and on behalf of J.C. Penney Company, Inc. Pension Plan is a Delaware corporation with its principal place of business in Plano, Texas.

Plaintiff JBUT Master Investment Partnership, LLP is a Wisconsin limited liability partnership with its principal place of business in New York, New York.

51

Plaintiff John Hancock Investment Management Services LLC for itself and on behalf of John Hancock Funds II Global Bond Fund and John Hancock Funds II Real Return Bond Fund is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.

Plaintiff John Hancock Ins. Co. of Vermont for benefit No. 113 is a Vermont corporation with its principal place of business in Burlington, Vermont.

Plaintiff John Hancock Trust Global Bond Trust is a mutual fund with its principal place of business in Boston, Massachusetts.

Plaintiff Johns Hopkins University is a Maryland corporation with its principal place of business in Baltimore, Maryland.

Plaintiff KCRC Retirement Benefit Scheme Unitised Trust is a trust organized under the laws of Hong Kong with its principal place of business in Hong Kong.

Plaintiff Kuwait Investment Authority is a Kuwaiti public authority organized under the laws of Kuwait with its principal place of business in Safat, Kuwait.

Plaintiff Local Government Pensions Institution of Finland is an independent public corporation operating in accordance with the Local Government Pensions Act of Finland with its principal place of business in Helsinki, Finland.

Plaintiff Longue Vue Partners is an entity with its principal place of business in Portland, Oregon.

Plaintiff Los Angeles County Metropolitan Transit Authority for itself and on behalf of Los Angeles County Metropolitan Transit Authority Retirement Income Plans is an entity with its principal place of business in Los Angeles, California.

Plaintiff Mars Pension Trustees Limited is an entity with its principal place of business in Veghel, The Netherlands.

Plaintiff Massachusetts Mutual Life Ins. Company on behalf of IBM Index Guaranteed Separate Account 1 is an insurance company with its principal place of business in Springfield, Massachusetts.

Plaintiff The McClatchy Company, successor to Knight-Ridder, Inc., for itself and on behalf of the Knight-Rider Master Retirement Trust TIPS is a Delaware corporation with its principal place of business in Sacramento, California.

Plaintiff Met Investors Advisory Corporation for itself and on behalf of Met Investors Series Trust (PIMCO Total Return Portfolio) is a Delaware corporation with its principal place of business in Boston, Massachusetts.

Plaintiff MillerCoors Brewing Company, formerly known as Molson Coors, for itself and on behalf of Molson Coors Master Retirement Trust is a Delaware corporation with its principal place of business in Denver, Colorado.

Plaintiff Missouri Local Government Employees' Retirement System for itself and on behalf of Missouri LAGERS – Commodity Real Return and Missouri LAGERS – Global Real Return is a public employee retirement system organized under Missouri law with its principal place of business in Jefferson City, Missouri.

Plaintiff Motion Picture Industry Health Plan (Active Member Fund) is a trust with its principal place of business in Studio City, California.

Plaintiff Motion Picture Industry Individual Account Plan is a trust with its principal place of business in Studio City, California.

Plaintiff Annuitas Management Limited for itself and on behalf of Board of Trustees of the National Provident Fund – F Fund of the Global Asset Trust, an entity organized under New Zealand law with its principal place of business in Wellington, New Zealand.

Plaintiff National Railroad Retirement Investment Trust is an entity with its principal place of business in Washington, D.C.

Plaintiff Nebraska Investment Counsel for itself and on behalf of State of Nebraska Pension and State of Nebraska Endowment is an entity with its principal place of business in Lincoln Nebraska.

Plaintiff Nestlé USA, Inc. for itself and on behalf of Nestlé USA, Inc. Master Retirement Trust is a Delaware corporation with its principal place of business in Greenwich, Connecticut.

Plaintiff The Comptroller of the City of New York as custodian of the funds of the New York City Employees' Retirement System, Teachers' Retirement System of the City of New York, New York City Fire Department Pension Trust, and New York City Board of Education Retirement System is a New York government entity with its principal place of business in New York, New York.

Plaintiff NiSource Inc. Master Retirement Trust for itself and on behalf of Retirement Plan of Columbia Energy Group Companies is a trust with its principal place of business in Merrillville, Indiana.

Plaintiff NTUC Income Insurance Co-operative Limited is a co-operative society registered in Singapore with its principal place of business in Singapore.

Plaintiff Ohio Operating Engineers Pension Fund is a trust with its principal place of business in Columbus, Ohio.

Plaintiff Petroleum Development Oman L.L.C. for itself and on behalf of Omani Staff Pension Fund is an entity with its principal place of business in the Sultanate of Oman.

Plaintiff Orange County Employees' Retirement System is a trust with its principal place of business in Santa Ana, California.

Plaintiff Oregon Investment Council on behalf of Oregon Public Employees Retirement Fund is an entity organized under Oregon law with its principal place of business in Salem Oregon.

Plaintiff Oregon Retail Employees' Pension Trust is a trust with its principal place of business in Tualatin, Oregon.

Plaintiff Pacific Life Insurance Company for itself and on behalf of Pacific Select Fund, a Massachusetts Business Trust, and its Managed Bond series is a California company with its principal place of business in Newport Beach, California.

Plaintiff Pacific Life Insurance Company for itself a on behalf of Pacific Funds, a Delaware Business Trust, and its separate series Managed Bond Fund and Inflation Managed Fund is a California company with its principal place of business in Newport Beach, California.

Plaintiff Porsche Business Services Inc. is an entity with its principal place of business in Lisle, Illinois.

55

Plaintiff Pension Fund of the Christian Church (Disciples of Christ), Inc. is an Indiana non-profit corporation with its principal place of business in Indianapolis, Indiana.

Plaintiff Public Employees' Retirement System of Mississippi is an entity organized under Mississippi law with its principal place of business in Jackson, Mississippi.

Plaintiff Pfizer Inc. by and through its Plan Assets Committee, the Investment Committee and the Global Benefits Investment Committee and on behalf of Pfizer Master Trust (Pension TIPS Portfolio) is a Delaware corporation with its principal place of business in New York, New York.

Plaintiff Pacific Gas and Electric Company for itself and on behalf of Pacific Gas and Electric Company Retirement Plan Master Trust is a corporation with its principal place of business in San Francisco, California.

Plaintiff Phelps Dodge Corp. for itself and on behalf of Phelps Dodge Corporation Master Trust is a New York corporation with its principal place of business in Phoenix, Arizona.

Plaintiff Premier Health Partners for itself and on behalf of Premier Health Partners Operating Investment Program is an Ohio non-profit corporation with its principal place of business in Dayton, Ohio.

Plaintiffs Primone Inc., Primtwo Inc., Primthree Inc., Primfour Inc., Primfive Inc., and Primsix Inc. are each incorporated in the British Virgin Islands having its principal place of business in London, Great Britain.

Plaintiff Producer – Writers Guild of America Pension Plan is a trust with its principal place of business in Burbank, California.

Plaintiff Dow Chemical Company for itself and on behalf of its subsidiary Union Carbide Corporation and Union Carbide Employees' Pension Plan (Prudential Ins. Co. Group Annuity GA-5298) is a Delaware corporation with its principal place of business in Midland, Michigan.

Plaintiff R.R. Donnelley & Sons Company for itself and on behalf of Retirement Benefit Trust of R.R. Donnelley & Sons Company is a Delaware corporation with its principal place of business in Chicago, Illinois.

Plaintiff Railways Pension Trustee Company Limited is an entity with its principal place of business in London, Great Britain.

Plaintiff RCM, formerly Dresdner RCM Global Investors LLC, for itself and on behalf of Dresdner RCM Global Investors Commingled Funds LLC and its series RCM Fixed Income Fund is an entity with its principal place of business in San Francisco, California.

Plaintiff StocksPLUS Management, Inc. for itself and on behalf of Red River HyPi, L.P. is a Delaware corporation with its principal place of business in Austin, Texas.

Plaintiff Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund is a trust with its principal place of business in Cypress, California.

Plaintiff Samaritan Insurance Funding Limited is an insurance company domiciled in the Cayman Islands.

Plaintiff Board of Retirement of the San Diego County Employees' Retirement Association (Core Plus and Real Return accounts) is an entity with its principal place of business in San Diego, California.

Plaintiff Finance Committee of the Schlumberger Master Profit Sharing Trust for and on behalf of Schlumberger Master Profit Sharing Trust, a trust with its principal place of business in Houston, Texas.

Plaintiff Screen Actors Guild – Producers Pension Plan is a trust with its principal place of business in Burbank, California.

Plaintiff Sentara Healthcare is a non-profit health system with its principal place of business in Norfolk, Virginia.

Plaintiff Sierra Pacific Resources for itself and on behalf of Sierra Pacific Resources Retirement Plan is a Nevada power company with its principal place of business in Las Vegas, Nevada.

Plaintiff Sisters of Charity of Leavenworth Health System is a Kansas corporation with its principal place of business in Lenexa, Kansas.

Plaintiff Specialforeningen ATP Invest II (Global High Yield Bond II), c/o Nykredit Portefølje Administration is an investment association registered with the Danish Financial Supervisory Authority with its principal of business in Copenhagen V Denmark.

Plaintiff The Northern Trust Company of Connecticut, as trustee for Sprint Master Trust (Enhanced Indexation), is a Connecticut State Bank and Trust Company with its principal place of business in Chicago, Illinois.

Plaintiff SSM Health Care Portfolio Management Company is an entity with its principal place of business in St. Louis, Missouri.

Plaintiff Stanford University by and through the Stanford Management Company on behalf of the Merged Endowment Pool is an entity with its principal place of business in Menlo Park, California.

Plaintiff State Retirement Agency for itself and on behalf of State Retirement and Pension System of Maryland is an entity with its principal place of business in Baltimore, Maryland.

Plaintiff Stichting Blue Sky Active Global Inflation-Linked Bond Fund is a bond portfolio with its principal place of business in Amstelveen, The Netherlands.

Plaintiff Stichting Bedrijfstakpensionenfonds voor de Metalektro (PME) is an entity with its principal place of business in Rijswijk, The Netherlands.

Plaintiff Stichting Dow Pensioenfonds is an entity with its principal place of business in Horgen, Switzerland.

Plaintiff APG Asset Management U.S. Inc. for itself and on behalf of Stichting Pensioenfonds ABP (Index Linked Bonds) is an entity with its principal place of business in New York, New York.

Plaintiff Sun Life Assurance Company of Canada (U.S.) (Variable Account H) is a Delaware life insurance company with its principal place of business in Wellesley Hills, Massachusetts.

Plaintiff SYSCO Corporation for its self and on behalf of SYSCO Corporation Retirement Plan is a Texas corporation with its principal place of business in Houston, Texas.

Plaintiff Tower Asset Management Limited for itself and on behalf of Global Bond Fund and the International Bond Fund of the TAM Group Investment Fund, a group investment fund, is an entity with its principal place of business in Wellington, New Zealand.

Plaintiff Prudential Investments LLC for itself and on behalf of The Target Portfolio Trust International Bond Portfolio is a New York limited liability company with its principal place of business in Newark, New Jersey.

Plaintiff Teachers' Retirement System of Oklahoma is an entity organized under Oklahoma law with its principal place of business in Oklahoma City, Oklahoma.

Plaintiff The Salvation Army is a non-profit New York Corporation with its principal place of business in Brunswick, Maine.

Plaintiff Transamerica Fund Advisers, Inc. for itself and on behalf of TA IDEX PIMCO Real Return TIPS, a separate series of Transamerica IDEX Mutual Funds, is a Florida corporation with its principal place of business in St. Petersburg, Florida.

Plaintiff Transamerica Fund Advisers, Inc. for itself and on behalf of IDEX PIMCO Total Return, a separate series of Transamerica IDEX Mutual Funds, is a Florida corporation with its principal place of business in St. Petersburg, Florida.

Plaintiff Transamerica Fund Advisers, Inc. for itself and on behalf of PIMCO Total Return (ATST) is a Florida corporation with its principal place of business in St. Petersburg, Florida.

Plaintiff Trustees of The Civil Aviation Authority Pension Scheme is a pension trust with its principal place of business in London, Great Britain.

Plaintiff United Food and Commercial Workers International Union–Industry Pension Fund (Blended Portfolio) is a trust with its principal place of business in Mokena, Illinois.

Plaintiff Southern California United Food and Commercial Workers Unions and Food Employers Joint Pension Trust Fund (StocksPLUS) is a trust with its principal place of business in Cypress, California.

Plaintiff General Board of Pension and Health Benefits of the United Methodist Church is a Missouri corporation with its principal place of business in Evanston, Illinois.

Plaintiff Morely Financial Services, Inc. on behalf of Union Bond and Trust Co. - The Actively Managed Fund, a trust with its principal place of business in Portland, Oregon.

Plaintiff Dow Chemical Company for itself and on behalf of its wholly owned subsidiary Union Carbide Corporation and Union Carbide Employees' Pension Plan is a Delaware corporation with its principal place of business in Midland, Michigan

Plaintiff USAA Benefits Investment Committee on behalf of the USAA Master Trust, Pension and RSP (Long Duration) and on behalf of the USAA Master Trust, Pension and SIP (Real Return), each a trust having its principal place of business in San Antonio, Texas.

Plaintiff Valero Energy Corporation for itself and on behalf of Valero Energy Corporation Pension Plan is a Delaware corporation with its principal place of business in San Antonio, Texas

Plaintiff Van Leer Group Foundation is a charitable foundation with its principal place of business in Amstelveen, The Netherlands.

61

Plaintiff International City Management Association Retirement Corporation for itself and on behalf of Vantage Trust (PLUS Fund) is a Delaware non-profit corporation with its principal place of business in Washington, DC.

Plaintiff The Prudential Company of America for itself and on behalf of VCA-GI-7 Diversified Mortgage Index Account and on behalf of VCA-GI-7 – MLP Account is a New Jersey corporation with its principal place of business in Roseland, New Jersey.

Plaintiff Verizon Investment Management Corporation for itself and on behalf of Verizon Communications Inc. Master Savings Trust is a Delaware corporation with its principal place of business in Basking Ridge, New Jersey.

Plaintiff Victorian Funds Management Corp. for itself and on behalf of Victorian WorkCover Authority is a statutory corporation organized under the laws of the State of Victoria of the Commonwealth of Australia with its principal place of business in Melbourne, Australia.

Plaintiff Investment and Administrative Committee of The Walt Disney Co. Sponsored Qualified Benefit Plans and Key Employees Deferred Compensation and Retirement Plan Master Trust for itself and on behalf of The Walt Disney Company Retirement Plan Master Trust, a trust with its principal place of business in Burbank, California.

Plaintiff The Harry and Jeanette Weinberg Foundation, Inc. is a Maryland corporation with its principal place of business in Owings Mills, Maryland.

Plaintiff Galliard Capital Management for itself and on behalf of Wells Fargo Bank Investment Funds for Employee Benefit Trust is a wholly owned, independently operated investment management subsidiary of Wells Fargo & Company, successor to

Norwest Bank Minnesota, N.A. with its principal place of business in Minneapolis, Minnesota.

Plaintiff Wheaton Franciscan Services, Inc. Investment Trust is a trust with its principal place of business in Glendale, Wisconsin.

Plaintiff Workers' Compensation Reinsurance Association is a non-profit organization with its principal place of business in Saint Paul, Minnesota

Plaintiff Wyoming State Treasurer's Office is a Wyoming government entity with its principal place of business in Cheyenne, Wyoming.

Plaintiff Xcel Energy Inc. for itself and on behalf of Xcel Energy Inc. Voluntary Employees' Beneficiary Trust for Retired Bargaining Unit Employees is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

Plaintiff MLC Investments Limited as trustee for National Corporate Investments Trust is an entity with its principal place of business in North Sydney, Australia.

Plaintiff Equity Trustees Limited for itself and on behalf of the following funds, PIMCO Global Real Return Fund, PIMCO Global CommodityRealReturn Fund, PIMCO Target Return Fund, PIMCO International Fixed Interest Trust, and MLC - Global is an entity with its principal place of business in Melbourne, Victoria.

Plaintiff Employee Benefit Plans Investment Policy Committee on behalf of MeadWestvaco Corporation Retirement Plan for Salaried Employees is an entity with its principal place of business in New York, New York.

Plaintiff Teachers' Retirement System of the State of Illinois is an entity organized under Illinois law with its principal place of business in Springfield, Illinois.